BERGMAN v. DENVER & R. G. R. CO.

No. 3103. Decided Jan. 6, 1919. (178 Pac. 68.)

1. CARRIERS—TRESPASSERS—RAILROAD DUTY—GUARDS. In action for injuries while stealing ride under passenger car, instruction that railroad was not required to station men along track to prevent. plaintiff and companions from boarding train and attempting to go beneath cars *held* warranted by pleadings. (Page 220.)

2. CARRIERS—TRESPASSERS. Persons who board train without authority are trespassers. (Page 220.)

3. CARRIERS—TRESPASSERS—RAILROAD'S DUTY. Railroad owes no duty to persons on train without authority until their presence is actually discovered, and then only to abstain from willfully or wantonly injuring them, and to use ordinary care to avoid injuring them after discovering them in perilous position. (Page 220.)

4. CARRIERS—TRESPASSERS—DUTY OF RAILROAD—DISCOVERY BY TRAINMEN. Railroad is under no duty to discover presence of trespassers on train. (Page 220.)

5. NEGLIGENCE—PROXIMATE CAUSE. Regardless of degree of negligence, plaintiff cannot recover where defendant's negligence was not the proximate cause of the injury. (Page 221.)

6. CARRIERS—INJURY TO TRESPASSER—EJECTION—PROXIMATE CAUSE. Trespasser suing for injuries from falling under wheels while stealing ride under passenger car could not recover on ground that railroad employee negligently ordered him to jump off while train was moving, unless such order was cause of trespasser's attempt to leave train. (Page 221.)

7. CARRIERS—INJURY TO TRESPASSER—BURDEN OF PROOF. Trespasser suing railroad for injuries when ordered to get off car has burden of proving railroad's negligence, and that such negligence was proximate cause of injury. (Page 222.)

8. CARRIERS—INJURY TO TRESPASSER—INSTRUCTION. In trespasser's action for injuries, instruction that negligence of employees not engaged in movement of particular train was not imputable to railroad was not objectionable on ground that employee not so engaged ordered plaintiff off train, where evidence failed to show that such order, if given, was proximate cause of trespasser's injury, and trespasser's own instructions were based on theory that the order was given by a brakeman of particular train. (Page 224.)

9. APPEAL AND ERROR—REVIEW—HARMLESS ERROR—INSTRUCTIONS. In trespasser's action against railroad for injuries, instruction that negligence of employees not engaged in movement of particular train was not imputable to railroad was not prejudicial to trespasser, where there was no evidence of negligence of employee not working on such train. (Page 224.)

10. CARRIERS—INJURY TO TRESPASSER—VARIANCE. Trespasser, basing action against railroad for injuries on threats forcing him to leave train, cannot recover on theory that railroad was at fault in not stopping train the moment some employee standing beside train saw trespasser start to go under it. (Page 224.)

11. CARRIERS—INJURY TO TRESPASSER—ORDER TO LEAVE CAR—LIABILITY OF RAILROAD. Trespasser discovered by trainmen while endeavoring to get position to ride in under car, and ordered by trainmen to leave car, cannot recover for injuries sustained while attempting, after car had started moving, to leave car in obedience to order, where order was not accompanied by threats of personal violence sufficient to cause him to lose self-control. (Page 224.)

12. CARRIERS—TRESPASSER—RAILROAD'S DUTY—EQUIPMENT OF TRAIN. Railroad owed trespasser stealing ride no duty to equip its train in such a way that the rear engine would have control over the automatic air brakes, nor to so equip train that stop signals given by train air whistle could be passed directly to lead engine. (Page 225.)

13. APPEAL AND ERROR — REVIEW — HARMLESS ERROR —. INSTRUCTION. Instruction stating law correctly, and relating to subject-matter of which there was more or less evidence, was not prejudicial, though not within issues made by pleadings.  (Page 225.)

14. TRIAL—INSTRUCTION.  Refusal of requested instructions covered by other instructions given was not error.  (Page 225.)

15. WITNESSES — EXAMINATION — NEGLIGENCE.  In negligence action, defendant's witness testifying to circumstances of accident, as related to him by plaintiff shortly after accident, without including in statement of circumstances as detailed by plaintiff the acts upon which claim of negligence was based, could properly be asked upon completing statement, if plaintiff had said anything further as to how injury occurred.  (Page 225.)

16. WITNESSES—LEADING QUESTIONS—DISCRETION.  Whether witness should be permitted to answer leading or suggestive questions is discretionary with court.  (Page 225.)

Appeal from the District Court of Salt Lake County, Third District; *Hon. M. L. Ritchie,* Judge.

Action by Joe Bergman, by his guardian ad litem, Henry Bergman, against the Denver & Rio Grande Railroad Company.

Judgment for defendant.  Plaintiff appeals.

AFFIRMED.

*Marioneaux, Straup, Stott & Beck* for appellant.

*Van Cott, Allison & Riter* for respondent.

THURMAN, J.

This is an action for personal injuries sustained by plaintiff while trying to ride underneath one of defendant's railroad cars at Helper station, Utah.  It is alleged by plaintiff, in substance, that he boarded said car for the purpose of riding thereon to Salt Lake City at a time when the train to which the car was attached was standing still; that he se-

cured a safe place in which to ride before the train was set
in motion; that after the train started to move, and had at-
tained a rate of speed at which it was dangerous for him to
attempt to get off, one of defendant's employees, in the dis-
charge of his duty as such, carelessly, negligently, recklessly,
wantonly, and willfully ordered him to get off said train;
that said order was made in a boisterous and threatening
manner; that said employee then and there threatened to
use personal violence upon plaintiff, and throw him off of
said car, unless he jumped off as he had been commanded
to do; that believing he was in danger of being forcibly
thrown from said car, and hearing a pistol shot about the
same time, he became afraid of said employee, and attempted
to obey said order, and in doing so was thrown under the
wheels of the car and run over, thereby inflicting upon him
the injuries for which he seeks damages.

Defendant, answering, denied these allegations, and further
alleged that plaintiff surreptitiously crawled under said car
while the train was moving; that he attempted to climb upon
the rods or beams underneath the car for the purpose of
stealing a ride; that while so riding and trespassing upon
said car in some manner unknown to defendant plaintiff slip-
ped and fell to the ground, where he was run over and in-
jured. Defendant also alleged that plaintiff was guilty of
contributory negligence.

The jury to whom the case was tried found for the defend-
ant, no cause of action. From the judgment entered thereon
plaintiff prosecutes this appeal. Certain instructions given
by the court and evidence admitted over plaintiff's objection
are assigned as error.

It is not disputed that at the time of the injury plaintiff
was a trespasser and was trying to steal a ride on defendant's
train. Neither is it contended that defendant company owed
plaintiff any duty except to use reasonable care to avoid
injuring him after it discovered his peril. The evidence,
although conflicting as to some of the material facts, is,
nevertheless, as far as material here, limited entirely to what
was said and done within a few brief moments of time.

The plaintiff had beat his way on defendant's train from some point east, and on the morning of the 25th of March, 1915, found himself at the Helper station waiting for an opportunity to board a west-bound train. The opportunity came. A west-bound passenger train of nine or ten cars arrived and remained at the station about ten minutes. The plaintiff, to avoid being seen, had moved from the depot side of the track to the opposite side, and just about the time the train commenced to move he crawled under one of the cars, and had either secured, or was attempting to secure, a position where he could ride when the injury occurred. As to whether the train had commenced to move before he crawled under the car or whether it was standing still the evidence is conflicting. The evidence is also conflicting as to whether or not he had been able to secure a position where he could ride with comparative safety before the injury occurred. In brief, at the close of the testimony the plaintiff had introduced evidence tending to show that he went under the car and secured a position where he could ride with safety before the train started to move; that, after it had attained a rate of speed at which it was dangerous to get off, he was peremptorily and threateningly ordered by a brakeman to get off the car; that plaintiff, believing he was in danger of personal violence, attempted to get off, and in doing so was caught under the wheels of the car.

On the other hand, the testimony of defendant's witnesses tends to show that the train was moving when plaintiff went under the car; that he was ordered by the traveling engineer, who happened to be present, to stay out from under the car; that the plaintiff had not secured a position where he could ride with safety; that there was no position under that particular car where a person could ride with safety unless he had ample time to place himself in such position while the car was standing still.

The principal errors complained of relate to instructions given to the jury. The instructions given by the court which are in any manner material to the issues involved are as follows:

"(11) The defendant was under no duty to station men

along the track to prevent the plaintiff and his companions from boarding the train, and I instruct you that you cannot render a verdict against the defendant because defendant failed to have guards at the train to prevent the plaintiff and other persons from attempting to go beneath the cars.

"(12) All persons who board the railroad company's trains without authority are merely trespassers, to whom the company owes no duty until their presence is actually discovered, and then only to abstain from willfully or wantonly inflicting injuries on them, or to use ordinary care to avoid injuring them if it actually discovers them in a position of peril. A railroad company is not under any duty to discover the presence of such persons on its trains. No obligation exists on the part of the members of the train crew to be on a lookout for such trespassers. When the trainmen actually acquire knowledge of the presence of such trespassers on the trains their only duty is to abstain from wantonly and willfully inflicting injuries on them, or, if they actually see them in a position of peril, to use ordinary care to avoid injuring them."

"(15) It is not every employee whose knowledge is imputable to the railway company. The mere fact that some employee may have stood beside the train and seen the plaintiff go beneath the °car does not necessarily mean that the defendant knew of his presence there. It is only those employees who in the scope of their employment in the movement and management of this particular train knew of the plaintiff's presence under the same whose knowledge can be said to be the railway company's knowledge. I therefore instruct you that you cannot charge the railroad company with knowing what some employee may have known as to the plaintiff's presence under the train, if such employee had nothing to do with the management or movement of this particular train.

"(16) If you should find that some of the defendant's employees did the things charged in the complaint, this does not necessarily mean that the defendant is liable. Before you can charge the defendant with responsibility you must find that the employee, if guilty of the things charged in the

complaint, did such things in the scope of his employment under authority conferred on him by the railroad company to expel trespassers from the train; and in this connection I instruct you that there is no evidence which would warrant you in finding that any employee outside of the crew of this particular train had authority to expel trespassers.

"(17) The defendant is not charged with omitting to do anything to avoid harm to the plaintiff, but with doing things which defendant ought not to have done, viz. by threats and intimidations forcing him to leave the train while going at a dangerous rate of speed and firing a pistol shot; and in this connection I instruct you that, if you find that the defendant is not guilty of the things charged, you have no right to return a verdict against it on the theory that it was at fault in not stopping the train the moment some employee standing beside the train saw the plaintiff start to go under it.

"(18) If you should find that the plaintiff was ordered by some proper employee of defendant's to leave the train as he was in the act of getting under it, and before he had succeeded in gaining a position of safety, and that in endeavoring to make his exit pursuant to such command he was run over and injured, without any pistol shot being fired, and without any threats of personal violence being made which would cause him to lose his self-control, then I instruct you that he cannot recover; for the defendant had the right, under such circumstances, to command him not to carry out his intended trespass, and the law will not impute to a command given under such circumstances wantonness or willful intention to inflict injury on defendant's part. Such a warning amounts to no more than what the law itself commands. While the defendant had no right to injure him wantonly or willfully in evicting him from the train, it did have the right to tell him to desist in his efforts if he was then attempting to secure a position to ride under the train, and if, in attempting to make his exit pursaunt to such warning, he was run over, his own negligence in attempting to steal a ride will bar any recovery.

"(19) The fact that the train was not equipped in such a manner that the rear engine had no control over the train's

automatic air brakes afford no ground for complaint on the part of the plaintiff. Nor does the fact that the air whistle throughout the train was connected with the rear engine, and not with the lead engine, and that stop signals were given by the train air whistle had to be transmitted by the rear engine to the front engine by whistle afford any ground for complaint on the part of the plaintiff. The defendant owed the plaintiff no duty to equip its train in such a way that the rear engine would have control over the automatic air brakes in the train, nor did the defendant owe the plaintiff any duty to equip its train in such a way that stop signals given by the train air whistle could be passed directly to the lead engine. I therefore withdraw from your consideration the question whether the train might have been stopped sooner if the train's air whistle had been connected to the lead engine instead of to the rear engine.''

Appellant excepts to instruction No. 11 on the grounds that ''the matter is not referred to in the issues in the case.''

In paragraph 3 of plaintiff's complaint it is alleged, in substance, that plaintiff believed he had a right to board the train, and that he was not warned by any of the employees of the defendant company or any of the trainmen not to get on the train. This language of the complaint invited the instruction complained of.

Appellant's exception to instruction No. 12 is general. The instruction as a whole is not erroneous. The exception thereto should not prevail.

Appellant also excepts to instruction No. 15, and assigns as grounds for the exception that the instruction excluded from consideration the traveling engineer as an employee of defendant, thus limiting the question of the defendant's liability entirely to what was done and said by the trainmen operating the train. Exception is also taken to instruction No. 16 for substantially the same reason. Appellant especially excepts to the latter part of said instruction, which reads as follows: ''I instruct you that there is no evidence which would warrant you in finding that any employee outside of the crew of this particular train had authority to expel trespassers.''

These two exceptions will be considered together; they relate to the same matter, and are by far the most important questions presented for our consideration.

Appellant's position, stated in our own language, is that there was substantial evidence that the traveling engineer, Mr. Snyder, was present at the time of the accident; that he, by virtue of his position, was authorized and empowered to expel trespassers from the train; that on the occasion in question he ordered plaintiff to get out from under the car while the train was in motion and running at a rate of speed which rendered it dangerous for plaintiff to attempt to leave the train; that therefore the instructions complained of were erroneous, and especially the language quoted from instruction No. 16.

Respondent resists this contention on several distinct grounds: (1) That, admitting that Snyder ordered the plaintiff to get out from under the car while the train was in motion, there is no evidence that the plaintiff heard the order, or that he was in any manner influenced thereby, and that therefore any order given by Snyder was not the proximate cause of the injury; (2) that the plaintiff himself was partially responsible for the giving of the instruction complained of by other instructions given at his request; and (3) that the instructions complained of were correct, as there was no evidence that Snyder had authority to expel trespassers from the train.

These contentions will be disposed of in the order above stated.

It is a fundamental principle of the law of negligence that no matter how negligent the person charged with negligence may be, or how great the injury complained of, unless such negligence was the proximate cause of the injury the person injured cannot recover.

Assuming, therefore, that Snyder, the traveling engineer, had authority to expel trespassers from defendant's trains; assuming, also, that there is evidence to the effect that Snyder ordered plaintiff to come out from under the train while it was moving, and that plaintiff's attempting to come out as ordered resulted in the injury of

which he complains—still, unless it appears that the order given by Snyder was the cause of plaintiff's attempt to leave the train, the evidence falls far short of establishing defendant's liability.

The burden was upon the plaintiff to prove by a preponderance of the evidence not only that the defendant was guilty of negligence as charged, but that said negligence was the proximate cause of the injury.

In order to determine whether or not Snyder's order was the impelling cause or had any connection whatever with plaintiff's attempt to leave the train, it becomes necessary to examine the evidence bearing upon that question. The plaintiff, testifying in his own behalf, stated, in substance, that after he had crawled under the car and secured a position where he could ride he saw a man running after the train. All he could see was the man's pants. The man in a loud voice said to plaintiff: ''Get the hell out of there—get out quick; if you don't get out, I'll make you get out.'' This language, together with a pistol shot about the same time, frightened plaintiff, in consequence of which he attempted to leave the car and was run over and injured. After plaintiff was injured he was removed to some point near the car. The shock of the injury rendered him unconscious. A large crowd gathered around him. On regaining consciousness he says he saw a man in blue uniform with metal buttons. He had on a flat cap with a brakeman's metal badge. The man said, ''I told him to get out of there.'' Plaintiff says he heard the man's voice, and recognized it as the voice that ordered him to get out from under the car. The plaintiff also introduced the testimony of Alfred Schmidt, who claimed to have witnessed the accident. Schmidt said:

''I heard a man who was dressed in a blue uniform with metallic badge and metallic strip on his cap marked 'Brakeman,' who had been aiding and working in the preparation of said train to leave, and said train started while said brakeman was at a distance of about seventy feet from me. He looked under the car and spoke to the plaintiff, who was seated as heretofore described, and while the train was in motion and gaining in speed ordered and said to plaintiff to

get off from said car and out from under the same, and at the same time the said brakeman used oaths and words, and said to the plaintiff to get out, and to get out quick, or he, the brakeman, would put the plaintiff off said car.''

The foregoing testimony of plaintiff and Schmidt is substantially all the testimony offered by plaintiff relating to the identity of the man who ordered him off the train.

Counsel for appellant, in his opening statement to the jury, relied on this testimony, and adopted the theory that it was a brakeman who ordered plaintiff to get off the train.

This theory of plaintiff is further emphasized in two of plaintiff's requests to instruct which were given to the jury. These instructions are numbered 4 and 5, and read as follows:

''(4) It is admitted that Joe Bergman was upon a car of the defendant company. He was himself negligent in being there. He was a trespasser. Under those circumstances, the company, or its employees who conducted its train, owed him no duty until they discovered him in peril, if he was. When they did discover him in peril, if he was in peril, they owed to him the duty of reasonable diligence to avoid injuring him while in such perilous position.

''(5) The court instructs you that the burden of proof in this case is on the plaintiff to show that when he was on the car that he was discovered by the trainmen in charge of the train, and that it was known to the men in charge of the train that he could not get off the train without increasing his danger to injury, and that the said trainmen failed to use reasonable diligence to avoid the injury; and, unless you believe this from all the evidence, by a preponderance thereof, then you shall find for the defendant.''

As will be seen, the instructions refer repeatedly to the trainmen in charge of the train. There is no avoiding the conclusion, especially in view of the evidence to which we have referred, that the plaintiff in requesting these instructions had in mind the men who were charged with the duty of moving the train from one point to another; the trainmen, in fact, consisting of the conductor, engineer, fireman, and brakemen.

There is not a syllable of evidence in the case that the plaintiff at the time he was under the car heard any other voice than that of the brakeman, which he afterwards recognized, or that he was in any manner influenced to leave the train by any other order than that of the brakeman. Besides this, the question of identity is placed beyond all question by the positive testimony of both plaintiff and Schmidt, who say the man who gave the order wore a uniform, including a cap with a brakeman's metal badge. Snyder, the traveling engineer, who was eliminated from the case by both the instructions complained of and by the instructions given at plaintiff's request, did not wear a uniform on that occasion, in fact he swore he never wore a uniform in his life. So that, whatever else may be said, it must be accepted as an established fact that any order that may have been given by Snyder was not the proximate cause of plaintiff's injury.

This disposes of the first and second propositions advanced by respondent in answer to appellant's contention. It likewise disposes of the third proposition; for if any order which Snyder may have given to the plaintiff could not, under the evidence, have been the proximate cause of plaintiff's injury, then it follows, as a matter of course, that whether or not Snyder had authority to expel trespassers from the train is wholly immaterial.

In view of all that has been said it is impossible to conceive how the plaintiff could have been prejudiced by the instructions of which he complains. The court is of the opinion that this assignment of error has not been sustained.

Appellant assigns as error the giving of instruction No. 17. We find no error in this instruction. The same is true as to the exception to instruction No. 18. The instruction as a whole states the law as we understand it. In support of this view counsel for respondent cite the following cases: *Powell v. R. R.*, 70 N. J. Law, 290, 58 Atl. 930, 1 Ann. Cas. 774; *Mugford v. R. R.*, 173 Mass. 10, 52 N. E. 1078; *R. R. v. Bernard* (Ky.) 37 S. W. 841.

Instruction No. 19 is also excepted to and assigned as error. While this instruction was not within the is-

sues made by the pleadings, yet there was more or less evidence relating to the subject-matter of which it treats. It stated the law correctly, and clearly was not prejudicial.

The refusal of the court to give certain requests of plaintiff was not error. These requests were covered by other instructions.

Finally, appellant excepts to the admission of certain testimony admitted over plaintiff's objection. The plaintiff having testified, as we have shown, that a brakeman ordered him off the train, the defendant called a witness to the stand who claimed to have had a conversation with plaintiff shortly after he was injured, in which the plaintiff detailed the circumstances relating to the accident. After relating what the plaintiff told him, respondent's counsel propounded to the witness the following question: "When he was telling you as to how he got hurt did he make any statement to the effect that any brakeman ran alongside the train and ordered him off?" This was objected to by appellant, and the ruling of the court permitting the witness to answer is assigned as error.

If it be true that the plaintiff detailed to the witness the circumstances attending the accident shortly after it occurred, and made no statement whatever concerning the conduct of the brakeman upon which he relied as negligence, certainly some inference might be drawn therefrom that the story concerning the brakeman was a recent fabrication. In any event, counsel for respondent certainly had the right, after the witness had completed his statement as to what the plaintiff told him, to ask if the plaintiff said anything further as to how the injury occurred.

Calling the witness' attention to some particular matter, as was done in this case, might have been objectionable as leading or suggestive; but objection was not made by appellant upon that ground, and, if it had been so made, it was clearly within the discretion of the court to permit the question to be answered. This also disposes of another exception taken by plaintiff on precisely the same grounds.

We have carefully considered all the assignments of error interposed by appellant in which the exceptions were properly taken, and find no error in the record. It is therefore ordered that the judgment of the trial court be affirmed, at appellant's cost.

FRICK, C. J., and CORFMAN and GIDEON, JJ., concur.

McCARTY, J., died after the submission of this cause and before the filing of the opinion.