## SUMSION v. STREATOR-SMITH, Inc.

No. 6479.   Decided January 2, 1943.   (132 P. 2d 680.)

46

Rehearing denied March 1, 1943.

*Zelph S. Calder,* of Salt Lake City, for appellant.

*L. H. Callister, Ned Warnock,* and *E. R. Callister, Jr.,* all of Salt Lake City, for respondent.

WOLFE, Justice.

Earl Sumsion, the plaintiff, damaged the steering apparatus on his automobile, and engaged the defendant, Streator-Smith, Inc., to tow it from the 1200 Block on South State Street, Salt Lake City, Utah, to the defendant's garage. The defendant hooked onto the plaintiff's car with a tow truck, hoisted its front wheels from the ground and proceeded to tow it north on State Street. After the tow truck had proceeded some 35 or 40 feet, a loaded coal truck crashed into the rear end of the plaintiff's car, causing considerable damage. The plaintiff brings this action against Streator-Smith, Inc., to recover damages. At the end of the plaintiff's case the trial court granted a motion for a non-suit and the plaintiff appeals.

Plaintiff contends that he made a prima facie case by establishing the existence of a bailor-bailee relationship and proving that the damage occurred while the automobile was in the control of the bailee. He relies on *Romney v. Covey Garage,* 100 Utah 167, 111 P. 2d 545, in support of this contention.

The defendant contends that the rule of the Romney case is not applicable to the facts of this case. Defendant further

contends that even if the rule of the Romney case were applicable here, the defendant was only under the duty to use the care an ordinary prudent person would have used in taking the car to the garage and that the evidence in the case introduced by the plaintiff shows that due care was used. Hence, it is argued, the plaintiff was correctly nonsuited under any view of the case.

Mr. Sumsion, the plaintiff, took the stand in his own behalf. He testified that he engaged defendant to tow his car to the defendant's garage; that the car, except for a bent radius rod, was in first-class condition when plaintiff turned it over to the defendant, and that when the car arrived at the garage it was badly damaged.

In this direct examination the plaintiff did not testify concerning how the accident happened, nor did the direct examination touch upon the issue of the defendant's negligence. Nevertheless, the defendant, over the plaintiff's objection, was improperly allowed to cross-examine the plaintiff on these matters.

Apparently attempting to overcome any possible harmful results which might have arisen because of this improper cross-examination, the plaintiff called other witnesses. Mrs. Sumsion, the plaintiff's wife, testified that she and her husband were riding in the tow truck when the impact occurred; that the driver of the tow truck had the windows of the truck up so that he could not have signaled and she testified that she did not see him signal. It was stipulated that in all other respects she would corroborate the testimony of her husband. An expert was then called to establish the value of the car and two pictures were offered in evidence to show the damage. Plaintiff then called an eye witness, Mr. Sherran. He testified that the tow truck had pulled away from the curb and had attained a speed of 5 to 10 miles per hour when the impact occurred. He did not see the coal truck until it was some 20 or 30 feet from the rear end of the plaintiff's car. Just as the coal truck came into Sherran's line of vision it swerved on the ice-covered highway and

skidded into plaintiff's car. It was traveling, according to Sherran, between 20 and 30 miles per hour.

The court, in granting the motion for a non-suit, held that the plaintiff had proved as a matter of law that the defendant had used due care. This was error. The roads were covered with ice and were admittedly dangerous. Although the defendant pulled onto the highway at a very gradual angle, the evidence shows that he did not signal. When roads are in such a condition, all reasonable warning signals should be given. However, this is the only act of negligence complained of. There is no evidence which tends to show a failure to keep a proper lookout nor was the coal truck shown to be so close that it might have been negligent to pull out at all. The only alleged negligence was the failure to signal and there was sufficient evidence to go to the jury on the question of whether the defendant signalled and whether the failure to signal was negligent conduct. But even so, the plaintiff still did not make out a prima facie case for recovery in negligence for there is no proof or evidence to show that the failure to give the arm signal was the proximate cause of the injury. It is a fundamental principle of the law of negligence that the person complaining has the burden of showing a causal connection between the negligent conduct complained of and the injury to the plaintiff. *Bergman* v. *Denver & R. G. R. Co.*, 53 Utah 213, 178 P. 68; *Newton* v. *Oregon Short Line R. Co.*, 43 Utah 219, 134 P. 567. In the instant case, there was no evidence to indicate that the tow truck driver failed to look before pulling away from the curb. The only negligent act complained of is the failure to signal. The plaintiff must supply the links in the chain of proximate cause which show that his failure to signal caused the collision. Some or all of the links may depend upon inferences. This would be true even if each link in the chain had been proved by persons who had seen the entire succession of events. For example, where a car, apparently turning too sharply, skids, a witness may conclude that the skidding was caused by the

sharp turning. However, if it is later shown that the brakes on one wheel had locked, the natural inference that the turning caused the skidding may be upset. In translating that which was observed into cause and effect, it is therefore often necessary to assume that the deductions in interpreting the results of the sense impressions were correct.

The serious question in the instant case is whether or not there is any substantial evidence in the record from which it may be legitimately inferred that the failure to give the arm signal caused the collision. Counsel for plaintiff, because of the rule of the Romney case, supra, did not deem it necessary to prove either proximate cause or negligence and the questions asked, therefore, were not designed to prove these points. The evidence relating to the issue of proximate cause is, therefore, very meager. Both plaintiff and his wife, together with the tow truck driver were sitting in the cab of the tow truck when they felt an impact. They then got out to see what had happened. They were not questioned to determine whether or not they were able to discover from possible tracks, markings, and other observations, what had caused the coal truck to skid. Sherran was the only witness called who saw the complete accident. He could not tell the court in which lane the coal truck was traveling, but he thought it was in the center lane or the one next to it. No questions were asked to determine whether or not it was necessary for the coal truck to turn out in order to avoid a collision. There may have been tracks to show just what did happen or Sherran may have noticed what caused to it to start to skid, etc., but he was not questioned on these points.

There was no attempt to negative other possible causes of the skidding. Sherran was the only witness questioned as to the condition of traffic on the highway near the place and time of the accident and he stated that he did not pay any particular attention. No attempt was made to show that this was a smooth road free from ruts and other obstructions which might have caused the skidding. There

was no showing that visiblity was bad. The tow truck, with its crane lifting the front end of plaintiff's car, must have been quite prominent. It had pulled away from the curb at a very gradual angle and at a very slow speed. It had proceeded some 35 to 40 feet. Even if we assume that the coal truck was travelling in the second lane it would have had to turn out only about two feet to avoid the accident for the tow truck had just started to enter the second lane. There was no sudden changing from one lane to another— no sharp or sudden turns.

It is argued that from all the facts and circumstances one might infer, as reasonable and probable, that the coal truck skidded because the tow truck pulled into its line of travel. To reach this conclusion one must make several assumptions which are not warranted from the evidence. It must be assumed: First, that the driver of the coal truck did not see the movement of the tow truck; second, that he did not see it because of a failure to give the arm signal; third, that he suddenly, and too late, discovered it; fourth, that it was in his pathway; fifth, that he was forced to or did throw on his brakes or turn out in order to avoid a collision; sixth, that his attempt to stop or turn caused him to skid into the plaintiff's car. On the other hand, the appearance of the tow truck, its slow movement, the length of time which the coal truck driver must have had to observe its movement, the gradual angle at which it was proceeding are all circumstances established by the evidence which make it unreasonable to assume that the coal truck driver did not observe the tow truck yet would have seen an arm signal. It is more reasonable to assume that he either saw the tow truck and elected to proceed or that he didn't see it and would not have seen an arm signal. It is equally reasonable to assume that skidding of the coal truck was merely contemporaneous with the movement of the tow truck. Everyone travelling on icy pavements has had the experience of suddenly skidding without any apparent cause. Or from the evidence it would be equally reasonable to assume that

the skidding was caused by the movement of other cars on the highway near the scene of the accident.

While deductions may be based on probabilities, the evidence must do more than merely raise a conjecture or show a probability. Where there are probabilities the other way equally or more potent the deductions are mere guesses and the jury should not be permitted to speculate. The rule is well established in this jurisdiction that where "the proximate cause of the injury is left to conjecture, the plaintiff must fail as a matter of law." *Tremelling* v. *Southern Pac. Co.,* 51 Utah 189, 170 P. 80, 84; *Tremelling* v. *Southern Pac. Co.,* 70 Utah 72, 257 P. 1066. Many cases are cited in support of this proposition and the court quoted with approval from 29 Cyc. 625 where it is stated:

> "The evidence must, however, do more than merely raise a conjecture or show a probability as to the cause of the injury, and no recovery can be had if the evidence leaves it to conjecture which of two probable causes resulted in the injury, where defendant was liable for only one of them."

The trial court correctly held that the plaintiff failed to make out a prima facie case for recovery in negligence. We therefore, turn to the consideration of plaintiff's contention that it was not necessary that he prove either negligence or proximate cause.

The pleadings and the proof establish the existence of a bailor-bailee relationship. It is generally conceded that in an action by the bailor against the bailee for the failure of the latter to return the bailed goods in the same condition as when he received them, the bailor may choose various theories for his action. If he frames it in trover, he must allege and prove a conversion by the bailee; if he frames it in case, he must allege and prove negligence; if he frames it in assumpsit, he must allege and prove a contract and the breach thereof. 6 Am. Jur., p. 445.

It is to be noted that in any event, the bailor must prove a duty and the breach of that duty. Here, as in the ordinary

bailment, that duty rests entirely on the bailment contract. 8 C. J. S., Bailment, § 22, p. 255; Id., § 26, p. 261. No express contract was made. It is therefore a contract which is implied by law from the conduct of the parties. The plaintiff requested the defendant to tow plaintiff's car to the garage. Defendant agreed to do so. Nothing was said concerning the obligation of the defendant to return the car. We must, therefore, determine what kind of a contract the law will imply from this conduct.

The Massachusetts court in *Willett* v. *Rich*, 142 Mass. 356, 7 N. E. 776, 777, 56 Am. St. Rep. 684, in ascertaining whether the existence of the fact of negligence on the part of the bailee was necessary to create liability for a breach of contract by the bailee, stated:

"This depends upon the character of the contract which, by implication of law, the warehouseman enters into when he receives goods for storage. It is clear that this contract is not such a one as is set out in the first count of the plaintiff's declaration. He does not agree that he will keep them safely, and on demand, deliver them in the same order and condition as when received by him. This would make him an insurer of the goods against all damage by accidents, deterioration, or any other cause. But the authorities clearly show that the implied undertaking of the warehouseman is not that he will at all events keep the goods safely, but that he will use ordinary care and diligence in keeping them. [citation of Mass. cases] Unless he fails to use due care in keeping the goods, he has not broken his contract but has done all that he agreed to do."

Later in the opinion the court said:

"* * * a plaintiff must show a breach of this contract to enable him to recover either in contract or in tort. We do not see how, by changing the form of his declaration, he can change the liability or rights of the warehouseman." See also *Hanna* v. *Shaw*, 244 Mass. 57, 138 N. E. 247; *Walters* v. *United States Garage*, 131 Me. 222, 160 A. 758; *Malaney* v. *Tait*, 60 Vt. 571, 15 A. 326, 6 Am. St. Rep. 135; *Galowitz* v. *Magner*, 208 App. Div. 6, 203 N. Y. S. 421; *Wagner* v. *Feitel*, Sup., 159 N. Y. S. 860; *White Swan Laundry* v. *Blue*, Ala. Sup., 137 So. 898.

Historically the obligation of the bailee to return the bailed chattel to the bailor was absolute. The bailee being in possession was the person who could pursue all of the remedies of an owner, such as appeals of robbery or larceny or the action for res adiratae. The bailor was considered to be the owner, but the sum of his rights in the bailed chattel was his superior right as against the bailee to get possession of the bailed property.

"Till he had recovered possession his position was like that of the disseised owner of land. He was deprived of most of the fruits and consequences of ownership, while the bailee in possession was, as against all the world except his bailor, treated as owner. * * * A bailee can, and always could, sue one who has taken goods from, or damaged goods in his possession, as though he were owner, and the defendant cannot set up the jus tertii of the bailor unless he claims through it.

"It is for this reason that originally the liability of the bailee to the bailor was absolute. The bailee, having been given the position of owner as regards third parties, it was only fair that he should be held liable to the bailor * * *. The extent of the bailee's powers was compensated for by the extent of his liability to the bailor: the meagreness of the bailor's powers was compensated for by denying to the bailee any defence against his bailor's action for the return of the goods." 3 Holdsworth's History of English Law, pp. 337, 338.

Holdsworth states at page 341 that under the influence of the Roman ideas of liability

"Bracton was prepared to modify the extent of the bailee's responsibility. 'It is plain,' says Maitland, 'that already in his day English lawyers were becoming familiar with the notion that bailees need not be absolutely responsible for the return of the chattels bailed to them, and that some bailees should perhaps be absolved if they have attained a certain standard of diligence.' In this he was followed by Britton. Britton would excuse a bailee if the goods were lost 'by accident of fire, water, robbery, or larceny,' for, 'against such accidents no one ought to answer for things lost, unless they happened by his fault or negligence;' and effect was given to this view in 1299 when robbery was allowed as a good defence to a baillee in an action of detinue. But, as we have seen, these Roman ideas ceased in the course of the fourteenth century to influence English law. Therefore Bracton's rules did not in the Middle Ages become part of English

law; and, in spite of Chief Justice Holt's efforts, they are not even now thoroughly acclimatized." See also P. & M. History of English Law, Vol. 2, pp. 169, 170.

As late as 1601, in *Southcote* v. *Bennet*, 4 Co. Rep. 83b, the court said:

"It is not any plea in a detinue to say that he was robbed * * * for he hath his remedy over by trespass or appeal to have them again."

And further, if

"A delivers goods to B generally to be kept by him, and B accepts them without having anything for it, if the goods are stolen from him, yet he shall be charged in detinue: for to be kept and kept safe are all one."

Holdsworth, in discussing the Southcote Case, states:

"It is clear from Southcote's Case that the court, in the light of new conception that liability should be founded on negligence, was beginning to think that they were hard rules. They were not extended to the newer variety of bailees; and we have seen that Coke advised that they should be evaded by making special contracts as to the measure of liability,"

and by

"The beginning of the eighteenth century, the judges were coming to the conclusion that negligence should generally be regarded as a basis of liability; and that, in the absence of negligence, no liability should as a rule be imputed. * * * But even then two survivals of the older law were still left—the innkeeper and common carrier"

were still held to be absolutely liable to return the chattel.

The earlier cases indicated that exercise of due care could be pleaded by the bailee in defense to an action of detinue by the bailor. Holdsworth, at page 342, states:

"In a doubtful case of 1315, which has been very variously interpreted, there is possibly a hint that the fact that the goods had been stolen might be a good defence to the bailee; and the law was so stated in 1355. In 1339 counsel said in argument that the fact that the goods bailed were burned together with the house in which they

were stored would be a good defence to the bailor's action. In 1432 Cotesmore, J. ruled that, 'If I grant goods to a man to keep to my use, if the goods by his default are stolen he is accountable to me for the goods; but if he is robbed of the goods he is excusable by law.' "

However, Holdsworth points out that this attempt to modify the absolute liability of the bailee never materialized until about the 18th century.

We can therefore conclude that originally the bailee was absolutely liable—he had no defenses to an action brought by the bailor. Later, Bracton sought to mitigate this rule and place the bailee's liability on fault, but there is much in later history to lead us to conclude that Bracton's efforts in this regard were premature. Coke was advising his clients to make special contracts to limit their liability and his advice was followed. By the end of the 17th century the concept of "no liability without fault" had infiltrated into bailment law and had become an essential part of the plaintiff's case. Along with this development came a change in the types of actions available to the bailor in actions against both the bailee and third persons.

Originally he had only the action of detinue, which was merely an off-shoot from the older action of debt. They were worded almost identically and were regarded as twin actions. The need for new actions originated because of the defects in the action of detinue, which did not afford relief if the bailee misused the chattel or returned it in a damaged condition. With the new concept of negligence the action of trespass on the case developed. Trover is a later development from the action of trespass on the case. Since Coke was advising his clients to make special contracts, the bailor no doubt in many cases proceeded in actions upon those special contracts. See Holdsworth's History of English Law, vol. 3, pp. 319-351; Pollock and Maitland, History of English Law, Vol. 2, p. 169.

Today, regardless of the type of action brought, the entire duty of the bailee with respect to the bailed chattel is

based on the bailment contract. *Rodgers* v. *First National Bank,* Tex. Civ. App., 68 S. W. 2d 371; *Pratt* v. *Martin,* 183 Ark. 365, 35 S. W. 2d 1004; Vol. 8, C. J. S. ■ Bailment, p. 261, § 26. Since there was no express contract in this case, the rights and duties of the parties are controlled by the contract which is implied by law from their conduct. The historical development of the law of bailments and the present-day authorities indicate that the liability of the bailee is founded on negligence for the law will not now imply an undertaking on the part of the bailee to insure the safekeeping of the chattels bailed. *Platt* v. *Hibbard,* 7 Cow., N. Y., 497; *Willett* v. *Rich,* supra; *Hanes* v. *Shapiro & Smith,* 168 N. C. 24, 84 S. E. 33; *Commercial Molasses Corp.* v. *New York Tank Barge Corp.,* 314 U. S. 104, 62 S. Ct. 156, 86 L. Ed. 89; *Barnett* v. *Latonia Jockey Club,* 249 Ky. 285, 60 S. W. 2d 622; *Walter* v. *Sanders Motor Co.,* 229 Iowa 398, 294 N. W. 621; *Hutchins* v. *Taylor-Buick Co.,* 198 N. C. 777, 153 S. E. 397; *Romney* v. *Covey Garage* 100 Utah 167, 111 P. 2d 545; *Grady* v. *Schweinler,* 16 N. D. 452; 113 N. W. 1031, 14 L. R. A., N. S. 1089, 15 Ann. Cas. 161, 125 Am. St. Rep. 674; Story on Bailments, 4th Ed., Sec. 442, p. 449.

There seems to be, however, some "discrepancies in the authorities, whether the onus probandi of negligence lies on the plaintiff, or of exculpation on the defendant, in a suit brought for the loss. In England the former rule is maintained. In America an inclination of opinion has sometimes been expressed the other way; yet, perhaps, the weight of authority coincides with the English rule." Story on Bailments, 4th Ed., Sec. 454, p. 462. In *Hanes* v. *Shapiro & Smith,* supra, the court points out that the duty to redeliver the property at the termination of the bailment is an essential part of every bailment contract. "If the bailee fails to do so, he is liable, unless he can show that his inability arises without fault on his part. There is considerable confusion among the decisions in regard to the burden of proof in cases where a bailee is sued for a loss or injury." [168

N. C. 24, 84 S. E. 36.] The court concludes that the better reasoned opinions place the affirmative burden on the plaintiff but the burden of going forward shifts when the plaintiff shows the bailment and the damage to the bailed chattel. See also *Hutchins* v. *Taylor-Buick Co.*, 198 N. C. 777, 153 S. E. 397, 398, where the court stated:

"Ordinarily, the liability of a bailee for the safe return of the thing bailed is made to depend upon the presence or absence of negligence. In proving this, the bailor has the laboring oar," but a prima facie case is made out by showing the bailment and the return in a damaged condition.

In *Romney* v. *Covey Garage*, supra, we held that in actions ex delicto by the bailor against the bailee the ultimate burden of proof at all times remained on the bailor, but we further held that he could meet this burden in the ordinary bailment case by showing the bailment and the failure to return or the return in a damaged condition. This showing gave rise to an inference of negligence which required the bailee to come forward with an explanation to show that the injury or loss was not due to his negligence. Unless bailee conclusively proved due care so that a directed verdict was required the jury would be allowed to consider both the inference and the evidence so produced by the bailee. We further stated:

"This holding puts negligence in ex delicto bailment cases and negligence in other tort cases on a parity. Moreover, it brings the ex-contractu action for breach of the contract of bailment because of loss or damage in line with the action for negligence for such loss or damage. There is no real reason why the form of action should materially change the remedy or fasten on the plaintiff a greater burden in one case than in the other. If the law is otherwise, holdings which will bring it in accord with this policy are overdue." [100 Utah 167, 111 P. 2d 547.]

The demurrer to the complaint in this case was properly overruled for the complaint alleges an insurer's contract. However, the plaintiff's evidence failed to prove an express

insurer's contract, and as we have seen from the above authorities the law will not imply one. Since the bailee has not assumed the liability of an insurer, "his undertaking is to exercise due care in the protection of the goods committed to his care * * *. In such a case the burden of proving the breach of duty or obligation rests upon him who must assert it as the ground of the recovery which he seeks." *Commercial Molasses Corp.* v. *New York Tank Barge Corp.*, 314 U. S. 104, 62 S. Ct. 156, 160, 86 L. Ed. 89. See also *Alpine Forwarding Co.* v. *Pennsylvania R. Co.*, 2 Cir., 60 F. 2d 734, 735, where the court said:

"The plaintiff sued at law upon the bailment, charging only a failure to return in good condition, reasonable wear and tear excepted; the answer denied some of the allegations, but pleaded no defence. Upon the trial the plaintiff proved the delivery and return in bad condition and rested. Strictly the complaint was bad on its face; the bailee can be held only for his negligence in the case of a demised barge."

We conclude, therefore, that negligence is an essential part of the plaintiff's case and that he has the ultimate burden of proof on this issue. We must now determine whether or not the plaintiff has met that burden in this case.

Ordinarily, under the rule of the Romney case, supra, the plaintiff can meet this burden by showing, as the plaintiff did here, the bailment and the return in a damaged condition. Upon this showing the law arbitrarily raises a presumption of negligence which makes a prima facie case for the plaintiff sufficient, unless bailee conclusively proves due care, to carry the case to the jury. See also *Beardslee* v. *Richardson*, 11 Wend., N. Y. R. 25, 25 Am. Dec. 596. This presumption is one of necessity which arises only because of the peculiar facts ordinarily present in a bailment case. The cases hold it would be unreasonable to require the bailor to prove negligence specifically when the bailee has exclusive possession of the facts and the

means for ascertaining them. This thought is expressed in the note in 43 L. R. A., N. S., 1168, 1175 as follows:

"One reason for holding that the bailee has the burden of proving due care, or of overcoming the presumption of negligence, or accounting for loss or damage to the property, is that, since the same is in his exclusive possession, he has better opportunity to know the cause of injury or manner of the loss, and that the bailor usually cannot have such knowledge. Hence, if the bailee does not have exclusive possession, the reason fails and the courts hold that the rule does not apply."

The cases almost universally hold that this inference of negligence will not arise in those cases where the bailor shows by his pleading or proof that he had the same opportunity to ascertain the facts as did the bailee. It is a rule based on necessity and will not apply if the necessity does not exist. *Boe* v. *Hodgson Graham Co.*, 103 Wash. 669, 175 P. 310; *Bertig* v. *Norman*, 101 Ark. 75, 141 S. W. 201, Ann. Cas. 1913D, 943; *Hansen* v. *Oregon-Wash. R. & N. Co.*, 97 Or. 190, 188 P. 963, 191 P. 655; *Weller & Co.* v. *Camp*, 169 Ala. 275, 52 So. 929, 29 L. R. A., N. S., 1106; *Cross* v. *Brown*, 41 N. H. 283; *North Atlantic Dredging Co.* v. *McAllister Steamboat Co.*, 2 Cir., 202 F. 181; *Glover* v. *Spraker*, 50 Idaho 16, 292 P. 613; *Delaware Dredging Co.* v. *Graham*, D. C., 43 F. 2d 852, 853.

In this case, the plaintiff did not rest his case on the proof of the bailment and the damage, but, even disregarding all improper cross-examination, he went further and explained how the accident occurred, showed that he had equal opportunity with the bailee to ascertain the facts, and that he was present when the accident occurred. Under the authority of the cases last cited above, the inference of negligence would not arise after this showing by the plaintiff. Hence, unless the negligence of the bailee affirmatively appeared from the evidence so produced the plaintiff failed to make out a prima facie case and was properly non-suited. As we have already pointed out, the plaintiff failed to prove that the defendant's negligence was the

proximate cause of the accident and therefore did not make out a prima facie case for recovery in negligence.

There is a variance between the contract alleged in the complaint and the contract proved but the defendant has not raised the point. The complaint alleges an insurer's contract; the proof shows only a contract ▮ implied by law to use reasonable care. The defect in the complaint no doubt arises from confusing a sufficient prima facie case with a sufficient pleading.

The motion to amend was not an attempt to amend to conform to the proof, but was designed to amend so that a city ordinance could be introduced in evidence. The refusal on the part of the trial court to allow this was not prejudicial error. By virtue of 104-14-4, R. S. U. ▮ 1933, amendments at this stage of the proceeding rest in the sound discretion of the trial court. It was no undue hardship to refuse to allow amendment for the statute of limitations has been tolled by 104-2-41, R. S. U. 1933, and the plaintiff may, if he so chooses, file a new complaint.

There is no prejudicial error in the lower court's order granting a non-suit and that order is hereby affirmed. Costs to the respondents.

LARSON and McDONOUGH, JJ., concur.

HOYT, District Judge (concurring in part, dissenting in part).

I agree with that part of the opinion which holds that the plaintiff had the burden of proving negligence on the part of the defendant under the circumstances shown in this case. I also agree with the statement in the opinion that the trial court was in error in holding as a matter of law that the defendant had used due care. I am unable to agree, however, with the holding that the court could say as a matter of law that there was no evidence to show that defendant's failure to use due care was the proximate cause of the accident. I think there was evidence from which a jury could reason-

ably find that the driver of the defendant's tow car was negligent—not only in failing to look back or signal but in driving into a traffic lane on an icy road when a loaded coal truck was approaching within a short distance from behind. I further think that the jury could reasonably have found that that negligence of the tow-car driver was the proximate cause of the accident. I therefore think that the nonsuit was improperly granted. A jury has the right to consider probabilities. *Schoepper* v. *Hancock Chemical Co.,* 113 Mich. 582, 71 N. W. 1031; *Lillstrom* v. *Northern Pac. R. Co.,* 53 Minn. 464, 55 N. W. 624, 20 L. R. A. 587; 20 Am. Jur. 1101, Sec. 1250, Note 3; *George* v. *Iowa & S. W. Ry. Co.,* 183 Iowa 994, 168 N. W. 322. What were the probabilities shown by the evidence in this case? It seems to me very probable that the skidding of the coal truck was caused by brakes being applied or an attempt being made to turn it; that the truck driver was very probably prompted or compelled to slow down or turn in order to avoid driving into the plaintiff's car or the tow car which was in front of it; that the tow car was very probably so far into the truckman's lane that it was natural for the truckman to try to slow down or turn.

Common experience tells us that a truck does not ordinarily skid when being driven straigh ahead on a level road unless brakes are applied or an attempt is made to turn, but if the road is icy and another car moves into the line of travel, necessitating slowing down or turning, then skidding is a very common experience. Adopting the ordinary rules as to presumptions, and without resorting to the doctrine of res ipsa loquitur, it seems to me that the jury could reasonably have believed from the evidence that the proximate cause of the skidding of the truck and of the plaintiff's damage was the negligence of the driver of the tow car in pulling diagonally into the icy road in the truckman's line of travel. I think therefore that the court was in error in taking the case from the jury. It is unfortunate of course that we do not have the benefit of the testimony of the driver

of the coal truck. But I think no presumption against the plaintiff should be indulged on account of his failure to call this witness, since it appears that such failure was due to the theory of plaintiff's counsel that he did not have the burden of proving negligence in order to make out a prima facie case.

I also think that it was not necessary for plaintiff to amend his complaint in order to have the evidence of negligence of defendant considered by the court at the time of the motion for non-suit. The evidence as to the circumstances of the accident had been brought out by defendant himself or without objection on his part. It may be proper, in an action against a bailee based upon his negigence, to require a plaintiff to plead negligence specifically, but if the complaint merely alleges the contract of bailment and the refusal of the bailee to return the property in the same condition as when received, and evidence is then received without objection on defendant's part of circumstances from which it can be inferred that defendant was negligent and that his negligence was the proximate cause of the accident, I think it improper to grant a non-suit.

MOFFAT, Chief Justice (dissenting).

I dissent. I concur, however, with what Judge HOYT says, in his dissenting and concurring opinion, to the effect that there was evidence sufficient to take the case to the jury.

PRATT, Justice, on leave of absence.