(No. 5562.   October 25, 1930.)

ORVILLE W. GLOVER, Respondent, v. I. J. SPRAKER, Appellant.

[292 Pac. 613.]

P. C. O'Malley and G. F. Hansbrough, for Appellant.

J. H. Andersen, for Respondent.

LEE, J.—Plaintiff and respondent, Glover, on November 30, 1925, entered into a contract of lease with defendant and appellant, Spraker, for the rent of the latter's farm, together with certain work horses and milk cows, for a period of one year. Plaintiff brought this action to recover damages arising from defendant's failure to furnish feed for the stock as contemplated by the contract, which provided:

"It is further agreed and understood that the party of the first part is to furnish hay to feed said work stock during the entire term of this lease, and grain during the heavy portion of the farm work. Also hay to feed said cows from the beginning hereof until new hay is harvested and available for feed, from which time to the termination hereof, the milk cows are to be fed from the hay raised upon said premises, undivided, and the work stock from hay furnished by the party of the first part as aforesaid. Provided, However, that if said lease should be determined at the end of one year, then the party of the second part is to leave as much hay on said premises for the use of the party

of the first part as is delivered to him by the party of the first part for the purpose of feeding said milk cows, same to be divided equally."

Below the signature of the parties was a memorandum reciting that at the time of signing the lease the hay to be furnished by defendant had been measured and delivered and consisted of 59 tons. At the end of the year, the parties renewed the lease, agreeing, in writing, that the terms of the original contract should apply *in toto*.

Charging defendant's failure to furnish hay as provided by the contract, plaintiff alleged:

"That the defendant has failed to furnish the hay to feed said cows from the beginning of said lease until new hay was harvested and available for feed during each of the years of 1926 and 1927, and has failed to furnish to exceed one-half of the hay as provided in said lease for feeding the work stock as aforesaid during the two years covered by said lease and the renewal thereof.

"That by reason of the failure of the defendant to furnish the hay to feed said cows and work stock as aforesaid, plaintiff was compelled to and did furnish the hay to feed said cows from the beginning of the lease to the time when new hay upon said premises became available in each of the years 1926 and 1927 and plaintiff was compelled to and did furnish one-half of the hay for feeding the work stock as aforesaid for the entire time that said lease and the renewal thereof remained in force as aforesaid, to-wit, for the years 1926 and 1927."

He then alleged that the market value of the hay so furnished by him was the sum of $624, and that defendant had refused, after demand, to pay said damage.

For a second cause of action, he alleged that the defendant had purchased nine tons of hay from him at the agreed price of $13 per ton, no part of which had been paid, and the same was past due.

Defendant admitted the execution of the lease and denied generally the remaining allegations of the complaint. As a further defense, he plead that the parties had arrived at a

complete settlement regarding the hay, about March 20, 1928, at which time he owed plaintiff $87.51, and that plaintiff had subsequently removed some seven tons of hay ·from the premises. He also filed a cross-complaint, consisting of five causes of action, only two of which are involved in this appeal. In the first of these he alleged that according to the terms of the lease he provided plaintiff ·with four head of good work horses. That during the month of July, 1927, plaintiff negligently permitted one of said horses to die, to his damage in the sum of $100. For his second cause of action in the cross-complaint, he alleged that under the terms of the lease plaintiff was obligated to feed and care for the milk cows in a prudent and farmer-like manner; that he failed to perform his duties in this respect, and negligently allowed the cows to get into a green alfalfa field, whereby two of them became bloated and died, plaintiff making no effort to save them. That the cows were of the reasonable value of $100 each, in which sum defendant was damaged. Plaintiff's demurrer to the cross-complaint was overruled.

At the close of defendant's case, the court sustained a motion for nonsuit as to these two causes of action, on the ground that no act of negligence or want of ordinary care was shown.

The jury returned a verdict for plaintiff in the sum of $559.90. Judgment for this amount was entered, from which said judgment, defendant has appealed.

In his first specification of error, appellant attacks the order of nonsuit, contending that respondent, as bailee of the animals, was, under the terms of the lease, liable for more than ordinary care. There is no foundation in the pleadings for such contention, as he did not plead the lease, either directly or by reference. His allegation that "the lease provided etc.," falls far short of pleading a contract upon which to found a special liability. It is settled that a cross-complaint must state a cause of action with the same degree of exactness as an original complaint, and its averments cannot be helped out by the allegations

contained in the main pleadings. (*Denton v. Detwiler,* 48 Ida. 369, 282 Pac. 82; *Dunham v. McDonald,* 34 Cal. App. 744, 168 Pac. 1063.) Respondent was but a bailee for hire, and as such, was responsible only for reasonable care. The rule is settled in such case that when a *prima facie* case is made, the burden is on the bailee to account for the loss of the article; but when that is shown, the burden is then upon the bailor to establish negligence on the part of the bailee. (*Scott v. Columbia Compress Co.,* 157 Ark. 521, 249 S. W. 13.) It necessarily follows that if the bailor himself accounts for the loss, and charges it to the bailee's negligence, he has lifted the burden from the bailee's shoulders, and until negligence is proven, the bailee need not open his mouth. (*McCarthy v. Wolfe,* 40 Mo. 520. See, also, Story on Bailments, secs. 410 and 454; *James v. Orrell,* 68 Ark. 284, 82 Am. St. 293, 57 S. W. 931.)

The only evidence introduced on the issue of negligence in the first cause of action was that respondent failed to notify appellant that the horse was sick. No such duty being shown, the mere failure to notify appellant is manifestly insufficient to prove negligence, and the court properly granted the nonsuit.

The same thing is true as to the second cause of action. With the exception of some statements alleged to have been made by respondent that "they got out on him and bloated" and died from eating green alfalfa, the record is silent as to a negligent act of respondent.

Appellant next contends that the court erred in instructing the jury, as a matter of law, that respondent contracted to leave on the premises the same amount of hay originally delivered to him, conceded to be 59 tons, and that one-half of such amount belonged to each party. Also in instructing them that appellant did not supply 59 tons at the beginning of the second year of the lease as he contracted to do, but furnished only one-half of that amount, and again giving respondent credit for 29½ tons.

The dispute arises over the construction of the following clause:

" . . . . Provided However, that if said lease should be determined at the end of one year, then the party of the second part is to leave as much hay on said premises for the use of the party of the first part as is delivered to him by the party of the first part for the purposes of feeding said milk cows, same to be divided equally.''

Ambiguous as this clause may be, it definitely establishes the amount of hay to be left, namely, that ''delivered for the purpose of feeding the milk cows,'' and not the amount originally delivered. Consequently, the court's instruction that the contract provided that ''the plaintiff Glover is to leave as much hay on the premises for the use of the party of the first part as was delivered to him at the commencement of the lease, such hay to be divided equally,'' is erroneous, as is also his instruction: ''The court as a matter of law construes this contract to mean, that at the end of the lease in 1926, the tenant Glover contracted to leave on the place the same amount of hay originally delivered to him in the fall of 1925, which it is conceded was 59 tons, and that one-half of such amount at the end of the term belonged to each party,'' and that ''the defendant did not again supply the 59 tons of hay for the year 1927, as he contracted to do in the lease but only furnished ½ of that amount. That being true as a matter of law, under the terms of the lease plaintiff would be entitled to one-half of the 59 tons left on the place.'' Considering the fact that both the horses and cows were fed from the original 59 tons for a period of about six months, the difference will be considerable.

The difficulty arises in reconciling the statement that such hay is to be left for the use of appellant, with that requiring it to be divided equally. In construing an ambiguous contract, the object to be attained should be given prime consideration. (*In re City and County of San Francisco,* 191 Cal. 172, 215 Pac. 549.) That this contract was intended as a fifty-fifty deal cannot be doubted. The contract specifically provided that ''the party of the second part shall yield and pay in consideration of the use of the

premises, etc., one-half of all crops raised, subject to the provisions hereinabove mentioned with reference to the hay." The exception as to the hay undoubtedly refers to the hay to be fed to the work stock, which appellant was to furnish. The purpose of the clause, then, must have been to provide a method of dividing the cost of feeding the cows during the entire term of the lease. Respondent had no hay to start with, or money to buy any, and appellant agreed to furnish it until new hay could be harvested, with the understanding that half of the amount so furnished would be returned to him. That is, the hay was to be divided before any was left for appellant's use.

Appellant testified to substantially such an agreement, as follows:

"Well, first I says how are we going to start out on the hay. I says I have got the hay here and it is going to be a fifty-fifty deal all the way through. You buy the hay and go on with it that way. He hadn't the money to buy the hay, and we agreed we would measure up the hay and when you go away you can leave me that much hay.

"Q. What did Mr. Glover say as to that?

"A. That was all satisfactory. That was all he could do he couldn't pay me for it."

By the court's instruction, respondent was given credit for 29½ tons of hay for each of the years 1926 and 1927, whereas he should have been credited with only one-half of the hay fed to the milk cows from December 1st of each year till new hay was harvested the following year. Or, to put it another way, appellant was charged twice for part of the hay fed to the horses. He was charged for the full amount of hay, belonging to respondent, which was fed to the horses, and under this instruction, he was again charged for that portion of the 59 tons which the horses ate from December of each year until new hay was harvested the following year.

The judgment is reversed and the cause remanded, for the sole purpose of ascertaining the amount of hay fed to the cows during the periods indicated, which is to be equally

divided. The difference between this amount and the amounts credited to respondent under the court's instruction, is to be deducted from respondent's judgment. In all other particulars, the judgment is affirmed. Costs to be equally divided between the parties.

Givens, C. J., and Budge, Varian and McNaughton, JJ., concur.

Petition for rehearing denied.