[Civ. No. 17202. Second Dist., Div. One. Feb. 17, 1950.]

W. W. DOWNEY, Appellant, v. MARTIN AIRCRAFT SERVICE, INC. (a Corporation), Respondent.

[Civ. No. 17201. Second Dist., Div. One. Feb. 17, 1950.]

BARTLETT C. SHACKFORD, Appellant, v. MARTIN AIRCRAFT SERVICE, INC. (a Corporation), Respondent.

Edison J. Demler and Stephen A. Pace, Jr., for Appellants.

Forrest A. Betts, Walter Ely and Betts, Ely & Loomis for Respondent.

WHITE, P. J.—Each of the plaintiffs and appellants herein was the owner of an airplane which was stored in the hangar of the defendant and respondent. On January 14, 1948, the hangar caught fire and the planes of plaintiffs were severely damaged. The plaintiffs each brought an action, alleging that defendant failed to deliver possession of the planes to plaintiffs upon demand, to their damage. At the trial, after the plaintiffs' testimony had established the foregoing facts, both parties rested and moved for a directed verdict. The trial court granted defendant's motion, and from the judgment entered on the directed verdict plaintiffs appeal.

The pertinent allegations of plaintiffs' respective complaints were that "plaintiff, at the special instance and request of the defendants, and each of them, placed the above mentioned airplane in the possession of the defendants, and each of them, as bailees for the purpose" (as to plaintiff Downey, of making and performing certain repairs, and as to plaintiff Shackford, of storage); ". . . that said defendants did accept said airplane . . . and promise and agree to surrender, deliver up and return said airplane to plaintiff upon his demand; that as a consideration therefore said plaintiff did agree, promise and covenant to pay to said defendants (the costs of making and performing the repairs) (a sum of money for the storage). . . ."

It was further alleged that each plaintiff, on or about January 15 or 16, 1948, offered to pay for the storage, or repairs,

as the case might be, and demanded the return of his airplane, but that the defendants failed and refused to return the same, to his damage.

The answer in each case was a denial of the allegations above set forth. No affirmative defense was alleged.

Upon the trial plaintiff Dr. Shackford testified that his Stinson plane was kept at the hangar of defendant, Martin Aircraft Service, Incorporated, and that he paid a hangar rental of $25 per month; that he had flown the plane on the day of the fire to test the tail wheel assembly, which defendant had been repairing; that on the afternoon of the 14th of January, 1948, after landing the plane and filling the gasoline tanks, Dr. Shackford and one of defendant's employees pushed the plane into the hangar. On the morning of the 15th of January, after the fire, he came to the airport and identified the burned metal remains of the plane.

It was alleged in the complaint that plaintiff Shackford had demanded the return of the plane. On cross-examination he testified:

"Q. You allege in your complaint, Dr. Schackford, in substance, that you made a demand—and this is purely legal language, I suppose—that you made a demand on Mr. Martin to deliver your plane to you and that he refused to deliver your plane to you; and now from the standpoint of strict accuracy and truth you didn't ever ask him to deliver your plane to you, did you?

"A. I suppose that is a technical way of phrasing it. Frankly, I went out and saw that there wasn't any plane to be delivered to anybody.

". . . You didn't demand, after you saw your plane there burned to a cinder, for him to deliver it to you in the condition you left it? A. That is right. . . . And he didn't refuse to deliver it to you, did he? A. No, I should say that I didn't know that question would come up. Q. I mean, it was obvious to you the next day when you went out there that redelivery to you of your ship was a practical impossibility. A. That is correct. . . . Q. You didn't know what caused it (the fire)? A. No. Q. Nobody else did as far as you knew? A. Not to my knowledge."

Mr. Downey, owner of the other plane, testified that his plane was stored on defendant's field, but not in the hangar, and in addition to storage, he paid for maintenance and repairs; that at the time of the fire the plane was in the hangar and in possession of defendant for the purpose of recovering

the control surfaces. He was in the vicinity at the time of the fire and saw his plane consumed. He testified: "Q. Did you, after the fire, after you saw your ship destroyed, ask him to deliver that particular ship back to you in the condition it was before the fire? Now, you can answer that question yes or no. A. I asked him to deliver the airplane. I didn't ask him to deliver it in the condition it was before the fire because I knew it was impossible. . . . Q. You knew the airplane had been destroyed. A. Yes, I did. Q. By a fire of unknown origin, didn't you? A. That is right."

After this testimony on the part of the plaintiffs, both sides rested and each made a motion for a directed verdict. The trial court pointed out that the plaintiffs' evidence disclosed destruction of the subjects of the bailments by a fire of unexplained origin and stated that the question was "whether destruction by fire unexplained would shift the burden of proof over to them (defendant) to prove that they were not negligent." The court then concluded that the action sounded in conversion and not in contract, and that there could be no recovery for conversion because there was no proof of an act of dominion wrongfully exerted. A verdict was thereupon directed for the defendant.

Whether the instant action sounded in conversion or for breach of contract of bailment is not controlling. The allegations of the complaints support either theory. It cannot be disputed that under the evidence a bailment existed. ■ Upon motion by a defendant for a directed verdict, the power of the court is the same as upon a motion for a nonsuit. Such a motion must be denied if there be any substantial evidence which would support a verdict for the plaintiff had such verdict been given. ■ The true question here presented is: When suit is brought against a bailee for hire for his failure to return the subject of the bailment, and it appears that the subject of the bailment has been destroyed (or lost, or stolen) while in the possession of the bailee, is the burden upon the bailee to show that the loss was not due to his failure to exercise ordinary care, or is the burden upon the plaintiff to establish such lack of ordinary care? If the burden is upon the plaintiff, he will be faced in many cases with insuperable difficulties in securing and presenting evidence. To place the burden on the defendant is in effect to hold that loss or destruction of the property, unexplained, warrants an inference that ordinary care was not exercised.

Prior to the adoption of the Warehouse Receipts Act (Stats. 1909, p. 437; 3 Deering's Gen. Laws, Act 9059), the decisions in this state as to the burden of proof when goods stored with a defendant have been lost or destroyed were conflicting and confusing. (See discussions in *George* v. *Bekins Van & Storage Co.*, 33 Cal.2d 834, 839, 840 [205 P.2d 1037], and *Wilson* v. *Crown Transfer etc. Co.*, 201 Cal. 701, 706, 707 [258 P. 596].) Section 8 of the aforesaid act provides that if a warehouseman fails to deliver the goods in compliance with a proper demand, the burden shall be upon him to establish the existence of a lawful excuse for such refusal. The Supreme Court, in the case first above cited, rejected the contention of defendant that a showing that the goods were destroyed by fire established a lawful excuse and placed the burden of proving negligence upon the plaintiff. Quoting from the opinion at page 840: "Although the court in the Crown Transfer case recognized that the cases decided before the adoption of the uniform act had been reconciled on the basis of the pleadings, it did not intend to make the burden of proof in cases involving storage contracts governed by the uniform act turn on whether plaintiff chose to allege only the contract and its breach instead of alleging that while stored under contract the goods were destroyed as a result of defendant's negligent custody. Thus the court disapproved dicta in *Runkle* v. *Southern Pacific Milling Co.*, 184 Cal. 714 [195 P. 398, 16 A.L.R. 275], and *Atwood* v. *Southern California Ice Co.*, 63 Cal.App. 343 [218 P. 283], that the burden of proof on the issue of negligence was on plaintiff, although in the Runkle case plaintiff had adopted a negligence theory in his complaint, and in the Atwood case he had sued on the theory of conversion. It is clear, therefore, that *in cases governed by the provisions of the uniform act,* the burden of proving that the goods were not lost because of negligence is on the defendant, *whether plaintiff frames his complaint on a negligence or a breach of contract theory.*" (Emphasis added.)

It might possibly be assumed, in view of the language used in the two cases above cited, that the rule placing the burden of proof on the defendant bailee applies only in cases arising under the Warehouse Receipts Act, where the language of the act leaves no room for doubt. However, the question of what the rule might be when the Warehouse Receipts Act is not applicable was not before the court in either of the two cases. The logic of the rule would seem to be as much appli-

cable to a garagekeeper, parking-lot operator, or person who accepts a chattel for purposes of repair, as it is to a warehouseman. In either case the party has undertaken, for reward, to use ordinary care in the safekeeping of a chattel.

*Wilson* v. *Crown Transfer etc. Co., supra,* admittedly based upon the Warehouse Receipts Act, was decided in 1927. *George* v. *Bekins Van & Storage Co., supra,* was decided in 1949. In 1938, the Supreme Court denied a hearing in *Travelers Fire Ins. Co.* v. *Brock & Co.,* 30 Cal.App.2d 112, 114 [85 P.2d 905], decided by Division Two of this court. In that case a brooch was entrusted to the defendant for repair. The defendant in turn delivered the brooch to a diamond cutter for the purpose of fitting a diamond to the brooch. The brooch was stolen from the diamond cutter, and in an action to recover the value of the brooch, defendant Brock and Company offered to prove that the reputation of the diamond cutter was such and his precautions were such that Brock and Company could not be considered negligent in entrusting the brooch to him. It was held on appeal that such proof should have been received, the court saying: ''The burden of proof rests with the bailee to prove, where the bailed property is not returned to the bailor, that the property was lost by theft, etc., without negligence of the bailee. (*U Drive & Tour, Ltd.* v. *System Auto Parks, Ltd.,* 28 Cal. App.2d Supp. 782, 784 [71 P.2d 354, 356].)'' In the case last cited, the Appellate Department of the Superior Court of Los Angeles County, said, with reference to the loss of an automobile from defendant's parking lot: ''But it now seems settled that where the plaintiff's action is strictly one of conversion, or upon the contract for failure to redeliver the property, the defendant must justify his failure, and if he relies upon the proposition that the property was lost by theft or fire without negligence on his part, the burden is on him to prove these facts, including his lack of negligence, in order to rebut the *prima facie* case of plaintiff.''

It is true that the court in *Travelers Fire Ins. Co.* v. *Brock & Co., supra,* relied solely upon the U Drive case decided by the Appellate Department of the Superior Court, and that tribunal stated the rule without regard to whether the decisions it relied upon were based upon or decided prior or subsequent to the enactment of the act. We are of the view, however, that these cases state the proper rule, that when a bailee who is under the duty of exercising ordinary care is unable to

redeliver the subject of the bailment, it is not enough for him to show that the property was lost, stolen or destroyed, but that if he relies upon such fact to excuse his failure, he must go further and show that the loss occurred without negligence on his part. As heretofore stated, a contrary rule would place upon the plaintiff, in many cases, an impossible burden. It is just and fair that one who undertakes for reward to care for a chattel should have the burden of explaining its loss or destruction while in his custody and of negativing an inference of negligence on his part arising from such loss or destruction.

The contention of respondent that plaintiffs failed to prove a bailment is without merit. The testimony was uncontradicted that the plaintiffs paid a monthly fee for the privilege of storing their planes, in the hangar in the case of Dr. Shackford and on the field outside the hangar in the case of Mr. Downey. Mr. Downey's plane was in the hangar at the time of the fire for the purpose of recovering the control surfaces, a task undertaken by defendant, and Dr. Shackford's plane had been worked on and the tail wheel was to be rechecked by defendant after the test flight which took place on the day preceding the night of the fire.

Respondent relies also upon the fact that no formal demand was made for the return of the planes. Mr. Downey took possession of the wreckage of his plane. Dr. Shackford saw his plane after it had been totally destroyed by the fire. A demand in such circumstances would have been a futile formality. It is well settled that a demand is unnecessary where the acts of the defendant show a conversion or where, under the facts, a demand would be futile. (*Weinberg* v. *Dayton Storage Co.*, 50 Cal.App.2d 750, 757 [124 P.2d 155], and cases therein cited.) The authorities cited involve situations where by an act of conversion the defendant has put it out of his power to redeliver the property in controversy or has evinced his determination to refuse redelivery. The same rule should apply where the property cannot be redelivered because of its loss or destruction.

It follows from the conclusions reached that it was error to grant the motion of defendant for a directed verdict. Appellants urge that the judgment should be reversed with directions to enter judgment for the plaintiffs. We are of the view that the interests of justice require that the cause be remanded for a new trial. We are further of the view that the defendant may offer evidence to show lack of negligence under his

denials of the allegations of the complaints. In other words, a showing of lack of negligence would negative the charge of a breach of the contract of bailment. However, the reversal is without prejudice to amendment of the pleadings by any party should he be so advised.

The judgments are reversed.

Doran, J., and Drapeau, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 17, 1950.