OTTO GERDAU Co., Plaintiff, *v.* BOWNE-MORTON'S STORES, INC., Defendant.

Supreme Court, Trial Term, New York County, October 5, 1955.

*Bailey & Muller* for plaintiff.

*Bogart & Lonergan* for defendant.

TILZER, J. The plaintiff sues for negligence in connection with the storing of certain merchandise at the defendant's warehouse. The first cause of action concerned the shipment of chilies; the jury returned a verdict in favor of plaintiff in the sum of $5,970.31. The second cause of action was in negligence and concerned a shipment of tumeric. The verdict of the jury was in favor of the defendant. No motion to set aside the verdict was made as to the second cause of action, and accordingly this opinion concerns itself merely with the first cause of action (chilies).

The plaintiff, an importer of spices, ordered about 200 bags of chilies from Japan by cable or purchase invoice. The chilies were shipped from Kobe, Japan, in December, 1950, aboard the SS *Flying Clipper,* and arrived on Pier 7, Bush Terminal Dock, on February 7, 1951. The peppers were not purchased by sample, nor were they inspected prior to their shipment in Kobe, Japan, nor when they arrived on February 7, 1951.

When the chilies arrived in New York, they were inspected by the Federal government pursuant to the provisions of title 21 (§ 334; § 342, subd. [a]) of the United States Code). Apparently

the type of inspection and the number of bags actually inspected is determined by the customs inspectors, depending, of course, upon the exigencies of each case, and more specifically depending upon how busy the customs men happen to be at that time. In the instant case they inspected 5% of the 200 bags involved and apparently found them to be in good condition. They ordered the entire shipment released, and on February 19, 1951, the merchandise was delivered to the defendant corporation, which maintained the warehouse. At that time the property in the bags was not examined by the plaintiff or the defendant.

On August 8, 1954, the New York City department of health, upon investigation, found that 78 of the bags which were in a duty-paid status were infected, and accordingly detained them pursuant to the Federal Food, Drug, and Cosmetic Act. (U. S. Code, tit. 21, § 301 *et seq.*) Eventually this lot of 78 bags and the remainder of the bags of chilies, 99, which were stored "in bond" were all seized. The 78 bags in duty-paid were destroyed by the United States Government and the 99 bags "in bond" were sold outside of the United States and shipped outside of the United States.

The only question which concerned the court at this time is whether the proof established that the bags of chilies were received by the defendant in good condition. The plaintiff relies upon the following circumstances to establish its case: (1) a clean warehouse receipt; (2) direct testimony of sampling by the United States authorities of 10 bags; (3) testimony that 22 bags in this lot were sold and shipped by the defendant corporation to people outside the country, that they were accepted and no complaint was made with respect to these 22 bags.

The court, at the end of the plaintiff's case and at the end of the entire case and when the verdict was returned in favor of the plaintiff, expressed grave doubt as to whether the plaintiff had sustained the proof which it is required to establish.

The clean warehouse receipt referred to by the plaintiff surely cannot establish that the merchandise in these bags was in good condition. Obviously they were not inspected by either the plaintiff or the defendant, and the warehouse receipt provides as follows: " In apparent good order except as noted (contents, weight, condition and quality unknown)." Thus, plaintiff's contention that this was a clean warehouse receipt has absolutely no significance except that there was nothing visible from the outside which would indicate that there was anything wrong with the contents of these bags. The receipt specifically provided

that the quality of the contents was unknown. In the instant case, as the discussion in this opinion will later show, these chilies were subject to contamination by a number of causes. The expert opinion in this case clearly supported the theory that they could have been contaminated in Japan from whence they came, during the trip on board the steamship, or while on the pier (all before the defendant corporation came into possession of these bags).

The sampling of 10 bags does not establish that all of the bags were in good condition at that time. Indeed, there is evidence which indicates that a proper sampling may not have revealed anything wrong with the merchandise, although in fact the merchandise had been contaminated before that time. The bags were large and weighed 200 pounds. The sampling involved the extracting of a few unknown pounds from a bag of 200 pounds. However, if we assume that the 10 bags were in good condition at the time they were received by the defendant, this is proof merely that the bags examined were in good condition. Similarly, if we accept the evidence which established that 22 bags were shipped from the defendant corporation to various customers and no complaints received as evidence that these 22 bags were in good condition, it would merely establish that the 22 bags involved were in good condition.

In a similar case the United States Court of Appeals, Fifth Circuit, in deciding the case of *Reider* v. *Thompson* (197 F. 2d 158, 161) said: " Evidence was introduced to show that the exterior of the boxes was in good condition and that there were no water stains apparent at the time of the issuance of the bill of lading and transshipment. The bill of lading recited receipt in ' apparent good order ', but that the 'contents and conditions of contents of packages [were] unknown '. These provisions are considered to relate to the external conditions of the packages and do not establish the condition of the contents " citing *The Dondo* (287 F. 239) and *The Niel Maersk* (91 F. 2d 932) to the same effect.

The courts have always held that the sufficiency of evidence is for the court to decide as a question of law. Accepting all of the plaintiff's evidence as true and drawing every favorable inference that the court or jury could have drawn from the evidence adduced, the totality of the evidence was insufficient to establish that the merchandise received by defendant was in good condition. Proof that 10 bags were in good condition is not proof that the entire number, or 199 bags, were in good condition.

The recovery in the instant case excludes the 22 bags delivered outside the country. It is entirely probable that some or all of the 10 bags were included in the lot of 22 bags.

The law is clear that the plaintiff has the burden of proving negligence in this case. Ordinarily a bailor relies upon the presumption in his favor created by proving the delivery of his merchandise in good order to the bailee and the bailee's failure to return it in good order to the bailor. It is incumbent upon the defendant, then, to offer by way of overcoming the presumption the showing by the defendant of the exercise of such care and diligence to avoid the damage entailed as a prudent person would have taken in the storage of his own merchandise. The plaintiff's burden to establish his case by a fair preponderance of evidence never shifts. It is with the plaintiff at all times.

It cannot be doubted that the first essential to the plaintiff's recovery is proof of delivery of sound merchandise to the defendant (see cases cited). In the instant case the sampling by the Federal authorities pursuant to the Food, Drug, and Cosmetic Act is hardly proof that the entire shipment was in good condition. The evidence in this case is undisputed that the Federal authorities take a spot check of the entire shipment. The evidence clearly established that in view of the high volume of work confronting the Federal inspectors, only a fraction of the imports are examined, and these by what is known as a " composite sample ". The sample is gathered by withdrawing unknown quantities from the lot (in this instance samples from 10 bags) and mixing all together. It requires the citation of no authorities to clearly establish that proof of 10 bags in good condition is not proof of 200 bags in good condition.

The defendant adduced evidence which tended to establish that he had discharged his obligation as a warehouseman. The plaintiff, on the other hand, relies upon the fact that having given the defendant merchandise in good order he was entitled to the merchandise in the same order as it was received. But the proof that it was in good order when delivered was lacking.

The testimony of the experts tended to establish that it is difficult to prove, where the infestation started. It was the opinion of the experts called by defendant that the infestation started before the merchandise was received at the warehouse. The experts called on behalf of the plaintiff had no opinion as to when infestation started. Indeed, the evidence adduced at the trial indicates that this form of spice (chili) had a very high rate of spoilage.

Counsel for the defendant cites authority which appears to indicate that 67% of all chilies imported to this country are infested. Under all of the circumstances established by the evidence, one cannot conclude that all of these circumstances point reasonably to the conclusion that the property was in good condition when received by the defendant. The law should not permit guess, speculation and surmise to substitute for proof.

Shearman and Redfield in their book on Negligence (Rev. ed., Vol. 4 [1955 Supp.], p. 20) set forth the rule as follows: " ' The cases almost universally hold that this inference of negligence will not arise in those cases where the bailor shows by his pleading or proof that he had the same opportunity to ascertain the facts as did the bailee. It is a rule based on necessity and will not apply if the necessity does not exist.' Per WOLFE, J., in Sumsion v. Streator-Smith, 103 Utah 44; 132 Pac (2d) 680, citing: North Atlantic Dredging Co. v. McAllister Steamboat Co., 202 Fed 181. Weller v. Camp, 169 Ala 275; 52 So 929. Bertig v. Norman, 101 Ark 75; 141 SW 201. Glover v. Spraker, 50 Idaho 16; 292 Pac 613. Cross v. Brown, 41 NH 283. Hansen v. Oregon-Wash. R. & N. Co., 97 Ore 190; 188 Pac 963; 191 Pac 655. Boe v. Hodgson Graham Co., 103 Wash 669; 175 Pac 310.''

Corpus Juris holds that: " *Bailor's knowledge of dangers and defects* has been held to preclude recovery for damage caused thereby, although there is authority to the contrary. A cold storer is not relieved of liability for damages resulting from improper temperature by the mere fact that the owner visited the warehouse at a time when the temperature was improper, or failed to remove the goods on learning of such improper temperature, nor by the fact that the owner's employees were handling the goods in storage, although he will not be held responsible for the spoiling of such goods as were stored with him after the owner had become cognizant of the deterioration of earlier consignments and had failed to notify the warehouseman of such deterioration.'' (67 C. J., Warehousemen and Safe Depositories, § 134, p. 521.)

All of the cases appear to hold that the property was in good condition at the time of delivery. Thus Richardson on *Evidence* [7th ed., p. 160] holds as follows: " [A] *prima facie* case [is proved,] * * * *if it is proved that the property was delivered in good condition* to the bailee and was returned damaged in a way that it would not ordinarily occur where proper care was exercised.'' (*Emphasis supplied.*)

Richardson further discusses the rule as follows: " § 183. Bailments. The rule in bailment cases as to who has the burden

of proving negligence seems to be that where the injury to the property occurs while it is in the possession of the bailee, and the injury shown is one that may ordinarily happen without negligence, such as loss or damage by theft or fire, the burden of proving negligence is on the bailor; but when the injury or loss is one that ordinarily does not happen without negligence, such as an injury to a horse from overwork or injury to property placed in cold storage, the burden is on the bailee to prove freedom from negligence. A few of the principal cases holding that the burden of proving negligence rests with the bailor are: Claflin v. Meyer, 75 N. Y. 260, 31 Am. Rep. 467; Campbell v. Klein, 52 Misc. 123, 101 N. Y. S. 577; Thorn v. Straus, 78 Misc. 139, 137 N. Y. S. 927; Stewart v. Stone, 127 N. Y. 500, 28 N. E. 595, 14 L. R. A. 215; Feld v. Slaven, 125 Misc. 253, 210 N. Y. S. 525.''

The language used by the author, which follows the excerpt, clearly indicates that all the cases in this State on this question cannot be harmonized. This is so in every jurisdiction in which this question has arisen.

This court holds that justice requires an adherence to the rule which places the burden of proof on the plaintiff to establish that the goods were actually in good condition when received by the bailee.

The plaintiff apparently relies upon circumstantial evidence to establish that the goods were delivered to him in good condition. It is fundamental that circumstances equally consistent with several hypotheses prove neither, and the party having the burden must fail. (*Ursaner* v. *Metropolitan Life Ins. Co.,* 274 App. Div. 77.)

It is fundamental that an inference cannot be based upon an inference. To prove a fact by circumstantial evidence the circumstance from which the inference is to be drawn must be established by direct proof. (*People* v. *Razezicz,* 206 N. Y. 249; *Lopez* v. *Campbell,* 163 N. Y. 340; *Ruppert* v. *Brooklyn Heights R. R. Co.,* 154 N. Y. 90; *People* v. *Kennedy,* 32 N. Y. 141.)

We cannot draw inferences sufficient to establish liability from facts or conditions which are not shown affirmatively to have been the cause of the alleged accident.

In *Lopez* v. *Campbell* (*supra,* pp. 347, 348) the court said: '' While a material fact may be established by circumstantial evidence, still, to do so the circumstances must be such as to fairly and reasonably lead to the conclusion sought to be established, and to fairly and reasonably exclude any other

hypothesis * * * '*Insufficient evidence is, in the eye of the law, no evidence.*' '' (Emphasis supplied.)

The Encyclopædia of Evidence (Vol. 2, pp. 189–190) holds: '' Negligence.—A. Presumptions and Burden of Proof.— a. *Fact of Loss*. The *onus* of establishing the fact that goods were returned in a damaged condition or not returned at all is on the plaintiff. b. *Of Negligence.*—On the question where the burden of proof belongs in an action between the bailor and the bailee for damage to or loss or non-return of the subject of a bailment, the authorities are in direct and almost irreconcilable conflict.'' and (pp. 192–193) '' (2.) Burden of Proof.— (A.) At Commencement of Action.—Massachusetts Rule.—In Massachusetts the burden of proof is held to be always on the plaintiff, on the theory that the burden never shifts. This rule has also been laid down in New York.''

The presumption of which the author speaks that arises from '' exclusive possession '' evokes this (p. 194): '' The law arbitrarily attaches to him a presumption of negligence in order to cast upon him the burden of proof.''

From Corpus Juris Secundum (Vol. 8, Bailments, p. 342): '' Where the action is brought for injury to the property caused by bailee's negligence, the burden of proof is on the bailor to show that the property was in good condition when delivered to the bailee. * * * Higman v. Carmody, 20 So. 480, 112 Ala. 267, * * * Minsky v. Steinberg, 162 Ill. App. 530.'' And (*ibid.*, pp. 344–345): '' The effect of this modern rule is not to shift the ultimate burden of proof from bailor to bailee, but merely to shift the burden of proceeding or going forward with the evidence; the ultimate burden of establishing negligence is on the bailor and remains on him throughout the trial.''

However, any peculiar advantage the warehouseman may have because of the exclusive possession of the property is clearly erroneous in the instant case. The plaintiff is an importer of this merchandise and knows of its spoilage, deterioration and probability of infestations. He is certainly in a better position than the warehouseman and he should therefore be held accountable. Where the reason for the rule does not exist, the rule should not be followed.

Thus is was pointed out at page 194 of the Encyclopædia of Evidence (Vol. 2, n. 12): '' The general rule is that proof of damage to goods delivered in good condition to bailee, raises a presumption of negligence, and casts upon the defendant the burden of proof; one of the reasons given being that the bailee naturally has better opportunities of knowing the circumstances

of the damage than the bailor. It is therefore held that when the bailor's agent is on the premises of the bailee at the time of the accident, and has as good means of knowing the circumstances as the bailee, the burden does not shift to the defendant, but is still on the plaintiff to establish the fact of negligence. Wall v. Gillin, Prtg. Co., 21 Misc. 649, 48 N. Y. Supp. 67.''

This court holds that in the instant case the bailor had as much if not greater knowledge of the condition of his merchandise as the bailee. It was his obligation to find out its true condition so that it could be established if it ever became necessary. Having failed to do so, he should not be permitted to recover.

To hold otherwise would be imposing an obligation on defendant which placed him at a decided disadvantage and would be altering the fundamental and basic rule that the plaintiff must establish his case by a fair preponderance of the credible evidence.

Warren in his book on Negligence in the New York Courts concludes as follows: '' On the whole case the burden is upon the plaintiff to establish negligence by a fair preponderance of the evidence.'' (2d ed., Vol. 2B, p. 301.)

The Court of Appeals forty years ago established this rule in *Matter of Case* (214 N. Y. 199) when the court stated (pp. 203–204): '' It is true that where conflicting inferences may not unreasonably be drawn, the weight of evidence is not for consideration in this court. It is still the rule, however, even in this court, that 'insufficient evidence is, in the eye of the law, no evidence.' (*Pollock* v. *Pollock,* 71 N. Y. 137, 153; *Laidlaw* v. *Sage,* 158 N. Y. 73, 94; *Fealey* v. *Bull,* 163 N. Y. 397, 402.) In the words of MAULE, J., in *Jewell* v. *Parr* (13 C. B. 916), ' When we say that there is no evidence to go to a jury, we do not mean that there is literally none, but that there is none that ought reasonably to satisfy a jury that the fact sought to be proved is established. ' (Quoted in *Pollock* v. *Pollock* and *Fealey* v. *Bull, supra.*) ''

The verdict of the jury for the plaintiff on the first cause of action is hereby set aside.

Motion by defendant, made at the close of the entire case, to dismiss the complaint, is hereby granted.

Settle order.