503 P.2d 291

Dale K. LOW, Plaintiff-Appellant,

v.

PARK PRICE COMPANY, whose true name is Highway Motor Company, an Idaho corporation doing business under trade name of Park Price Motors, Defendant-Respondent.

No. 11030.

Supreme Court of Idaho.

Nov. 13, 1972.

Rehearing Denied Dec. 11, 1972.

.

**92**

Lynn E. Thomas, of Johnson & Olson, Pocatello, for plaintiff-appellant.

R. Don Bistline, Pocatello, for defendant-respondent.

DONALDSON, Justice.

The defendant-respondent, Highway Motor Company, dba Park Price Motors, operates an automobile repair garage in Pocatello, Idaho. On December 2, 1969, Cal Dale Low, the son of plaintiff-appellant Dale K. Low, brought the latter's car to the respondent's garage for repairs. In order to make these repairs, it was necessary to remove the engine from the appellant's car. Having removed the engine, the respondent stored the car in an unfenced area between the garage and an adjacent street. While the vehicle was stored in this location, its transmission disappeared. On or about December 18, the respondent told the appellant that the transmission had been stolen. Exactly when and by whom the transmission was removed are facts which remain unknown.

The respondent disclaimed any obligation to compensate the appellant for the loss of his transmission. The appellant then commenced this action for conversion and, in the alternative, for negligence. The parties stipulated that the lost transmission had a reasonable market value of five hundred dollars. In its answer, and at the trial, the respondent admitted its status as "bailee" of the appellant's automobile.[1]

After a nonjury trial, the district court entered judgment in favor of the respondent garage owner and denied the appellant car owner's motion for a new trial. This appeal followed.

■ In its initial conclusion of law, the district court stated that the respondent, as a bailee for hire, owed the appellant-bailor the "highest degree of care" to protect the bailed property. Although this ruling has not been assigned as error, both parties to this appeal recognize that this is not a correct statement of the applicable law. As a bailee for hire, a repair garage operator is required to exercise ordinary or reasonable care to protect vehicles entrusted to his custody for repairs or servicing. Carson v. Bye, 79 Idaho 495, 321 P.2d 604 (1958); Glover v. Spraker, 50 Idaho 16, 292 P. 613 (1930); Rosendahl v. Lemhi Valley Bank, 43 Idaho 273, 251 P. 293 (1926); Kelley v. Capital Motors, Inc., 204 S.C. 304, 28 S.E. 2d 836 (1944); Chaloupka v. Cyr, 63 Wash.2d 463, 387 P.2d 740 (1964); 14 Blashfield, Automobile Law and Practice §§ 476.1, 476.22 (3 ed. F. Lewis 1969); R. Brown, The Law of Personal Property § 81 (2d ed. 1955); Allen, Liabilities of Garages other than those arising from Collisions of Automobiles, 1966 A.B.A. Section of Insurance Negligence and Compensation 230, 237 (1966); Annot., 48 A.L.R. 378, 380 (1927); 38 Am.Jur.2d, Garages, and Filling and Parking Stations, §§ 49, 59 (1968); cf. Annot., 7 A.L.R.3d 927, 935 (1966).

In his work on evidence, Professor George Bell correctly observes that: "The bailment cases in Idaho have practically exhausted the various possibilities for allocating the different burdens of proof. It is difficult, if not impossible, to unravel the contradictory holdings." G. Bell, Handbook of Evidence for the Idaho Lawyer 223 (1957). In Rosendahl v. Lemhi

---

1. The respondent was a bailee for hire. Burt v. Blackfoot Motor Supply Co., 67 Idaho 548, 186 P.2d 498 (1947) (car placed in storage at repair garage pending procurement of necessary parts); 38 Am.Jur.2d, Garages, and Filling and Parking Stations, § 48 (1968).

Valley Bank, *supra*, the Court indicated that after the bailor had proved the bailment and the bailee had shown that the bailed property had been stolen, the burden was on the bailor to show that the bailee had not exercised ordinary care. *Id.* 43 Idaho at 278, 251 P. 293. In Cluer v. Leahy, 44 Idaho 320, 256 P. 760 (1927), the Court stated that where chattels are delivered to a bailee and returned in a damaged state, or are lost or not returned at all, the law presumes negligence to be the cause and casts upon the bailee the burden of showing that the loss is due to other causes consistent with due care on his part. But, the Court went on to say, the burden of proving negligence remains on the bailor throughout the trial, although the presumption arising from injury to the goods or failure to redeliver is sufficient to satisfy this burden and to make out a prima facie case against the bailee. In *Cluer*, the record contained no evidence "satisfactorily explaining the loss" of the bailed property, nor did it contain any "direct proof of negligence." *Id.* at 324, 256 P. 760. Judgment in favor of the bailor was then affirmed on the ground that the bailee had failed to account for the loss of the bailor's property. In another case decided the same year as *Cluer*, the following statement of the rule appears:

"Ordinarily, where property is injured, lost, or destroyed while in possession of a bailee, a presumption of negligence arises, making a *prima facie* case, and casting upon the bailee the burden of showing that the loss was due to other causes consistent with due care on his part. [Citing Cluer v. Leahy, *supra*.] But, when it appears that the loss or injury was caused by fire or other extraordinary intervention, the burden is upon the bailor to prove a lack of ordinary care or violation of some specific duty by the bailee resulting in the proximate cause of the damage. [Citing Rosendahl v. Lemhi Valley Bank, *supra*, and authorities from other jurisdictions.]" Carscallen v. Lakeside Highway Dist.,

44 Idaho 724, 727–728, 260 P. 162, 163 (1927).

Twenty years later, in Burt v. Blackfoot Motor Supply Co., 67 Idaho 548, 553, 186 P.2d 498, 501 (1947), the Court said:

"When a bailor sues the bailee to recover for loss or damage to bailed property and alleges and undertakes to prove negligence, the burden is upon him so to do.

Where the property is in the sole and exclusive possession of the bailee and is lost or damaged, a prima facie case is made by the plaintiff [bailor] when he shows the property was bailed to the bailee and has not been returned on demand, or has been damaged. It is then incumbent upon the bailee to show that such loss or damage was without negligence upon his part."

The inference left by the *Burt* case was that when a bailor does not specifically allege negligence in his complaint, the bailee then has the burden of persuading the fact finder that he had exercised ordinary care. Such a rule makes the allocation of the burden of persuasion depend on the niceties of pleading; nevertheless, this position has been taken in many jurisdictions. *See* Sweet, Burden of Proof of Bailee's Negligence in Connection with His Failure to Redeliver, 8 Hastings L.J. 89 (1956). More recently, in Dick v. Reese, 90 Idaho 447, 452, 412 P.2d 815 (1966) (dealing with the alleged improper performance of automobile repairs), the Court, without citing any of the aforementioned Idaho cases, stated that upon the establishment of a prima facie case of negligence, the burden of going forward—but not the burden of persuasion—shifts to the bailee.

None of the Idaho cases we have reviewed set down any reasons for their positions on the question of whether the bailee or the bailor has the burden of proof. However, in Shockley v. Tennyson Transfer & Storage, 76 Idaho 131, 134–135, 278 P.2d 795, 797 (1955), where the bailee's liability was governed by the provi-

sions of the Uniform Warehouse Receipts Law, the Court stated:

"A warehouseman, subject to the provisions of the act, who is unable to deliver the goods because of their destruction by fire of unknown origin, bears the burden of proving that he exercised due care, and that the bailed goods were not destroyed because of his negligence. * * *

*The warehouseman is in a better position to know and prove the cause of the fire and to account for the injury or loss of the goods than is the bailor. The bailor, generally speaking, does not have the knowledge or information, nor equal means to acquire it.* Establishing that the origin of the fire is unknown is not sufficient in itself to free the warehouseman from liability." Emphasis added.

The emphasized language is significant; the logic employed is as applicable to a bailee who accepts a chattel for repair as it is to a warehouseman. In either case, the bailee has undertaken, for consideration, to use ordinary care in the safekeeping of a chattel. Downey v. Martin Aircraft Service, 96 Cal.App.2d 94, 214 P.2d 581, 584 (1950). And as the Supreme Court of Oregon has stated:

"In the absence of some very compelling reason for taking a different course, the courts should avoid the incongruity of one rule for bailees subject to the Warehouse Receipts Act and a different rule for other bailees." National Fire Ins. Co. v. Mogan, 186 Or. 285, 206 P.2d 963, 967 (1949).

Until its repeal in 1967, I.C. § 69-108 in pertinent part provided that "the burden shall be upon the warehouseman to establish the existence of a lawful excuse" for his failure to deliver the bailed goods. Effective December 31, 1967, I.C. § 69-108 was superseded by the pertinent Uniform Commercial Code provision, § 7-403 (I.C. § 28-7-403). The drafters of the U.C.C. left it optional with each state adopting the code whether the burden of proving negligence should be upon the bailor or the burden of proving reasonable care upon the bailee. Thus, the official text of U.C.C. 7-403(1)(b) (as it appears in Uniform Laws Annotated) in pertinent part provides:

"(1) The bailee must deliver the goods * * * unless and to the extent that the bailee establishes any of the following:

* * *

(b) damage to or delay, loss or destruction of the goods for which the bailee is not liable [, but the burden of establishing negligence in such cases is on the person entitled under the document [i. e., on the bailor]];

Note: The brackets in (1)(b) indicate that State enactments may differ on this point without serious damage to the principle of uniformity."

When I.C. § 28-7-403 was enacted, the bracketed language was omitted; therefore, the Idaho Legislature has clearly indicated that, as a matter of policy, the burden of establishing negligence should not be placed upon the bailor. And, we believe, in the absence of some very compelling reason for taking a contrary course, courts should avoid the incongruity of one rule for bailees subject to the U.C.C. and a different rule for other bailees. *Cf.* National Fire Ins. Co. v. Morgan, *supra.* Hence, it is the conclusion of this Court that a bailee for hire should have the burden of proving ordinary care—meaning the burden of persuasion, not merely the burden of going forward with the evidence— and the allocation of this burden should not be affected by the presence of allegations of negligence in the bailor's complaint.

Although this holding is concededly a minority position, we believe that those cases placing the burden of persuasion on the bailee are the better reasoned decisions. The following comments, from various cases and legal periodicals, are exemplary:

"Since the bailor has *entrusted* (and not merely 'committed') his property to

the custody of the bailee and further since the bailee receives such possession in the expectation of profit, on the grounds of desirable public policy it would certainly not seem unjust to require the bailee, when he is unable to redeliver the property so entrusted to him, to establish his exercise of due care by a preponderance of the evidence. In addition to the policy considerations just mentioned, one might ask: who is in a better position to explain the loss? Certainly not the bailor. He has delivered possession to the bailee who takes control and determines the manner of keeping. In most cases it would be almost impossible for the bailor to prove the bailee's negligence. Accessability to evidence on the issue of due care would seem to be almost exclusively the bailee's. Certainly requiring the bailee to establish by a preponderance of the evidence that he has been free from culpable fault in connection with the loss, theft or destruction of the bailed article does not have the effect of making him an insurer of the goods.

\* \* \* It is arguable whether, in the light of human experience, it logically follows that the bailee has been negligent in such a situation but certainly it is a possibility that deserves consideration. Regardless of the question of logical deduction, in the interests of sound public policy and with the realization that access to evidence of due care is almost exclusively the bailee's, it seems just and fair that the bailee should have the burden of establishing his freedom from negligence." Sweet, Burden of Proof of Bailee's Negligence in Connection with his Failure to Redeliver, 8 Hastings L.J. 89, 95 (1965). "This court has held that the burden of proof is upon the bailee to prove that he exercised the degree of care required of him. Davis v. Tribune Job Printing Co., 70 Minn. 95, 72 N.W. 808. Considerations of fairness put upon the ware-

houseman the burden of proving his own freedom from negligence. The goods are intrusted to him. He has charge and control of them. He determines the manner of keeping them. He is in possession of such evidence as there is as to the circumstances attending the loss. The bailor trusts the warehouseman and has no proof. It is not unjust to the warehouseman to require him to sustain the burden of proving its freedom from negligence. Where the burden of proof should rest 'is merely a question of policy and fairness, based on experience in the different situations.' Wigmore on Evidence, § 2486. We hold that when the liability of the carrier has become that of a warehouseman, and the loss of the goods shipped is established, the burden of proof is upon it to show its freedom from negligence. This burden is not merely the burden of going forward with the evidence, nor a shifting burden, but a burden of establishing before the jury absence of negligence. So far as the case of Bagley Elevator Co. v. American Express Co., 63 Minn. 142, 65 N.W. 264, which involves a liability of a carrier as a warehouseman, like the case at bar, states a different rule, it is disapproved. The rule now stated is entirely fair. It is a practical working rule, and the only one." Rustad v. Great Northern Ry. Co., 122 Minn. 453, 142 N.W. 727, 728 (1913) (followed consistently in Minnesota; see, e. g., Wallinga v. Johnson, 269 Minn. 436, 131 N.W.2d 216, 219 (1964)).

"The view of the courts supporting the minority rule is that the bailee, being in exclusive possession of the chattel, is in a far better position to explain the origin of the fire and to produce evidence of the circumstances which would determine whether or not it was due to his negligence, than the bailor. We think there is a good deal of truth in this observation of the South Carolina court in Fleischman, Morris & Co. v. Southern

Ry. Co., 76 S.C. 237, 56 S.E. 974, 977, 9 L.R.A.,N.S., 519:

'* * * In most cases, to require the owner to assume the burden of showing that the fire or theft was due to the lack of ordinary care is to impose an impossible task and place him more than ever at the mercy of the warehouseman.'" National Fire Ins. Co. v. Mogan, 186 Or. 285, 206 P.2d 963, 966 (1949).

"We are of the view, however, that these cases state the proper rule, that when a bailee who is under the duty of exercising ordinary care is unable to redeliver the subject of the bailment, it is not enough for him to show that the property was lost, stolen or destroyed, but that if he relies upon such fact to excuse his failure, he must go further and show that the loss occurred without negligence on his part. As heretofore stated, a contrary rule would place upon the plaintiff, in many cases, an impossible burden. It is just and fair that one who undertakes for reward to care for a chattel should have the burden of explaining its loss or destruction while in his custody and of negativing an inference of negligence on his part arising from such loss or destruction." Downey v. Martin Aircraft Service, 96 Cal.App. 2d 94, 214 P.2d 581, 584–585 (1950).

"Although a bailor's often insurmountable burden of proving a bailee's negligence is adequate justification for [presuming negligence], will it not have other beneficial incidents? Most cases concern bailments for hire and arise either out of thefts from, or fires in, garages, parking lots, warehouses, laundry and dry cleaning establishments, and other business places. This rule tends to promote care and caution in the handling and keeping of bailed chattels with a resulting reduction in economic losses from negligent fires and other causes. In those few cases where it is impossible to determine fault, it will tend to place the loss where it can be more conveniently shifted, either by insuring or by spreading it among the bailees' customers in the form of increased rates. It may also, by giving incentive for precautions, reduce opportunities for car thieves and others of like inclination.

* * * * * *

Blanket coverage bailee's insurance policies are available to garages, parking lots, warehouses, et cetera, at the same or lesser rates than individual bailors would be required to pay. They are also much more convenient, especially where clothing is left at a laundry or dry cleaning plant. Most businesses of this type do have a blanket policy covering any liability for losses of or injury to goods in their hands. The expense of the policy is usually defrayed by a small addition to their service charges." Comment, 31 Texas L.Rev. 46, 51–52 (1952).

To summarize, shifting both burdens (of going forward with the evidence and of persuading the fact finder) to the bailee is justified by the following considerations: (1) the bailee has superior access to the evidence; (2) it is probable that loss or damage will not occur if the bailee exercises ordinary care; (3) this rule will induce the bailee to take precautions to prevent damage to, or the loss of, bailed property; (4) losses will be spread out either by the bailee's procurement of insurance or by increased charges for services to bailors; and (5) it is desirable to apply a uniform rule to all bailees, including those not subject to the U.C.C. For these reasons, the Idaho bailment cases discussed above are disapproved to the extent that they place the burden of proving negligence upon the plaintiff-bailor. While courts are ordinarily reluctant to impose upon defendants the duty of proving the non-existence of negligence, an exception is justified in bailment cases, for the reasons delineated above.

In its defense at trial, the respondent-bailee introduced testimony as to the currently prevailing custom and usage regularly observed by other service garages in the area. The appellant contends initially that the court erred in *admitting*

such evidence because, he submits, the customary practices of the Pocatello garage owners constituted negligence *as a matter of law* and indicated a deliberate disregard of a known high risk of theft. In certain cases, where negligence or the absence of it appears as a matter of law, proof that the act or omission of the defendant did or did not conform to general usage or custom is immaterial. Annot., 137 A.L.R. 611 at n. 1 (1942). What everyone else does may be so clearly negligent in itself that it may be excluded from evidence. Prosser on Torts 170 (3d ed. 1964). But these are the "extreme cases." *Id.* As a general rule, the customs of the community, or of others under like circumstances, are factors to be taken into account in determining whether conduct is negligent. Restatement (Second) of Torts § 295 A (1965). We do not think this is one of the extreme cases where it may be said that the defendant's practices, or those customarily adhered to by others similarly situated, are negligent as a matter of law. Therefore, the evidence of custom was properly admitted in this case. But the appellant further contends that the trial court erroneously reasoned that simply *because* the respondent had adhered to the customary practices among garage owners in the area, the respondent was, for that reason—and for that reason only—not negligent. "In determining whether conduct is negligent, the customs of the community, or of others under like circumstances, are factors to be taken into account, *but are not controlling where a reasonable man would not follow them.*" *Id.* (emphasis added). In other words, "custom or usage does not determine ordinary care, but the standard is what a reasonably prudent man under like circumstances would do." Albrethson v. Carey Valley Reservoir Co., 67 Idaho 529, 538, 186 P.2d 853, 858 (1947). Or, as Justice Holmes succinctly stated the rule: "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." Texas & Pac. Ry. Co.

v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905 (1903); *accord, e. g.*, Yellowstone Pipe Line Co. v. Kuczynski, 283 F.2d 415 (9th Cir.1960). A good summary of the law is contained in comments b and c to § 295 A of the Restatement (Second) of Torts (1965):

"b. *Relevance of custom.* Any such custom of the community in general, or of other persons under like circumstances, is always a factor to be taken into account in determining whether the actor has been negligent. Evidence of the custom is admissible, and is relevant, as indicating a composite judgment as to the risks of the situation and the precautions required to meet them, as well as the feasibility of such precautions, the difficulty of any change in accepted methods, the actor's opportunity to learn what is called for, and the justifiable expectation of others that he will do what is usual, as well as the justifiable expectation of the actor that others will do the same. If the actor does what others do under like circumstances, there is at least a possible inference that he is conforming to the community standard of reasonable conduct; and if he does not do what others do, there is a possible inference that he is not so conforming. In particular instances, where there is nothing in the situation or in common experience to lead to the contrary conclusion, this inference may be so strong as to call for a directed verdict, one way or the other, on the issue of negligence. Thus, even in the absence of any applicable traffic statute, one who drives on the right side of a private way is under ordinary circumstances clearly not negligent in doing so, and one who drives on the left side is under ordinary circumstances clearly negligent.

On the same basis, evidence of the past practices of the parties to the action in dealing with each other is admissible, and relevant, as indicating an understood standard of conduct, or the reasonable expectation of each party as to what the other will do.

c. *When custom not controlling.* Any such custom is, however, not necessarily conclusive as to whether the actor, by conforming to it, has exercised the care of a reasonable man under the circumstances, or by departing from it has failed to exercise such care. Customs which are entirely reasonable under the ordinary circumstances which · give rise to them may become quite unreasonable in the light of a single fact in the particular case. It may be negligence to drive on the right side of the road, and it may not be negligence to drive on the left side when the right side is blocked by a dangerous ditch. Beyond this, customs and usages themselves are many and various. Some of them are the result of careful thought and decision, while others arise from the kind of inadvertence, neglect, or deliberate disregard of a known risk which is associated with negligence. No group of individuals and no industry or trade can be permitted, by adopting careless and slipshod methods to save time, effort, or money, to set its own uncontrolled standard at the expense of the rest of the community. If the only test is to be what has always been done, no one will ever have any great incentive to make any progress in the direction of safety. It follows, therefore, that whenever the particular circumstances, the risk, or other elements in the case are such that a reasonable man would not conform to the custom, the actor may be found negligent in conforming to it; and whenever a reasonable man would depart from the custom, the actor may be found not to be negligent in so departing."

*Accord,* Prosser on Torts, *supra* at 168–171; *see, e. g.,* The T. J. Hooper, 60 F.2d 737 (2nd Cir. 1932), cert. denied, Eastern Transp. Co. v. Northern Barge Corp., 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571 (1932), wherein Judge Learned Hand stated:

"Indeed in most cases reasonable prudence is in fact common prudence; but strictly it is never its measure; a whole calling may have unduly lagged in the adoption of new and available devices. It never may set its own tests, however persuasive be its usages. Courts must in the end say what is required; there are precautions so imperative that even their universal disregard will not excuse their omission." 60 F.2d at 740.

■ Turning to the case at bar, we note that since the respondent has shown that it has done what others do under like circumstances, there is at least an inference that it is conforming to the community's idea of reasonable behavior. Prosser on Torts, *supra* at 169; *see* Restatement (Second) Torts, *supra* § 295 A, comment b. Where there ıs nothing in the evidence or in common experience to lead to a contrary conclusion, the inference arising from conformity to custom may be so strong that the issue of negligence may be determined as a matter of law. Prosser on Torts, *supra* at 169; Restatement (Second) Torts, *supra* § 295 A, comment b; *see, e. g.,* Grammer v. Mid-Continent Petroleum Corp., 71 F.2d 38, 41 (10th Cir. 1934) ("The test is reasonable care, not customary usage. The appellee met this test, for there is no evidence of better equipment or safer practices."); Dibble v. New York, N. H. & H. R. Co., 100 Conn. 130, 123 A. 124 (1924); Corthell v. Great Atlantic & Pacific Tea Co., 291 Mass. 242, 196 N.E. 850 (1935); Weireter v. Great Northern Ry. Co., 146 Minn. 350, 178 N.W. 887 (1920); Sanford-Day Iron Works v. Moore, 132 Tenn. 709, 179 S.W. 373 (1915). We conclude that this is such a case. The appellant-bailor failed to introduce any evidence to overcome the inference of reasonable care arising from the respondent-bailee's evidence; and there is nothing in common experience to lead to the conclusion that the respondent's conduct was negligent. Therefore, even though the burden of persuasion is on the respondent-bailee, in this case the bailee proved, by a preponderance of the evidence, its freedom from negligence.

■ The appellant's remaining assignment of error—to the effect that the court

erred in refusing to allow the appellant to ask one of the garage-owner witnesses what his profits amounted to for the preceding year—is without merit. In making this inquiry, the appellant sought to disprove the witness's assertion that he could not afford to hire a night watchman. The district court correctly concluded that the information sought to be elicited was immaterial. Whether the garage owner could afford to hire a night watchman is immaterial to the question of whether ordinary care requires a night watchman. Of course, the cost of the suggested precaution would be relevant in determining whether the reasonable man would employ it. Prosser on Torts, *supra* at 152. But in this case, the appellant did not seek to establish the cost of employing a night watchman; rather, the appellant sought to show that the witness's profits were such as to indicate that he could currently afford to take such a precaution against theft.

Judgment affirmed. Costs to respondent.

McFADDEN, SHEPARD and BAKES, JJ., and MARTIN, D. J., concur.